This case involves the validity of the alleged last will and testament of Frank R. Harris, deceased, late of Grosse Pointe Shores, claimed to have been made and executed February 27, 1925, at the office of John W.L. Hicks, an attorney, in the city of Detroit. Mr. Harris died March 1, 1925, and March 26, 1925, the executor named in the alleged will filed a petition in the probate court of Wayne *Page 691 
county to admit such will to probate. April 29, 1925, the will was admitted to probate by the probate court of Wayne county. June 26, 1925, Lauramaye Harris, one of the contestants, filed a petition in the probate court alleging the will admitted to probate was not the will of Frank R. Harris, deceased. On August 4, 1925, an order granting a rehearing was made by the probate court. A petition was then filed by George Morris, a beneficiary under the will, asking that the issue made by such petition be certified to the circuit court for Wayne county for trial. An order was made December 14, 1925, so certifying it. The case was tried in the circuit court for Wayne county before a jury from January 24, 1929, to February 7, 1929, when the trial was concluded, a verdict rendered for contestants and judgment entered thereon. A motion for a new trial was made and denied, and the case is brought here on error, proponent alleging several reasons why the case should be reversed:
1. The court charged the jury among other things:
(a) "The court instructs the jury that a will, to be valid, in this State, must be signed by the testator in the presence of two witnesses who must also sign in his presence and in the presence of each other. The court instructs the jury that if you find that the signature of Frank R. Harris was upon the alleged will before Glen R. Young came into the office of John W.L. Hicks, you must return a verdict for the contestant.
(b) "The court instructs the jury that if you find that Frank R. Harris' signature was obtained prior to February 27, 1925, to the alleged will, you must return a verdict for the contestant, as the proponent claims that the witness signed the will February 27, 1925. *Page 692 
(c) "The court instructs the jury that if you find that Frank R. Harris did not sign the alleged will in the office of John W.L. Hicks you must find a verdict for the contestant."
3 Comp. Laws 1915, § 11821, prescribes the formalities for the execution of a will. This statute provides:
"No will made within this State, except such nuncupative wills as are mentioned in the following section, shall be effectual to pass any estate, whether real or personal, nor to charge or in any way affect the same, unless it be in writing, and signed by the testator, or by some person in his presence, and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses; and if the witnesses are competent at the time of attesting the execution of the will, their subsequent incompetency, from whatever cause it may arise, shall not prevent the probate and allowance of the will, if it be otherwise satisfactorily proved."
The charge of the court directed the jury to find a verdict for contestants, providing the will of testator was not signed by him in the presence of both the witnesses thereto. This is not the law. If the testator signed his name to the will prior to the time the witnesses or either of them came into his presence, the will would not be invalid. The testator had a right to sign the will in one place and take it into the presence of the witnesses and declare the same to be his last will and testament in the presence of such witnesses. This part of the court's charge was error.
2. In denying proponent's motion for a new trial it was said:
"The only issue in the case was whether or not the signature to the will was genuine or a forgery." *Page 693 
It is apparent the part of the charge referred to in paragraph numbered one herein conflicts with the conclusion of the trial court in the disposition of the motion for a new trial.
3. Upon the trial, counsel for contestants said to the jury:
"Here is Frank R. Harris, a bachelor, who had been born, brought up with his sister-in-law, who had lived with them, who had lived in her family; who had known Lauramaye Harris and Joseph Harris since they were babes; had all the tradition centered around them through all his years which had been carried down, as the testimony shows to the day of his death; all his affections centered around them and couldn't a more and better reason for a man giving it to them and the greater doubt that he ever gave it to his beloved friend, so-called, George R. Morris, than the appearance of Lauramaye Harris and Joe Harris and Mrs. Harris presented upon this stand. You don't have to go far, that it is not a difficult thing for Frank R. Harris to find all his affections centered in such people as those. You don't find better people than Lauramaye Harris, better people appearing on the stand than they did; that he jumped over all those natural ties, chose to give it to a man of another race, whom he had known only a year."
This was an argument to the jury that the will was void because contrary to natural justice. It was an appeal to prejudice. No issue of the mental incapacity of the deceased was involved in the trial of the issue. The law provides how the property of intestates shall descend and be distributed. It permits anyone of full age and of sound mind to make a testamentary disposition of property. That the testator acted under the law of wills and directed how he wished his property disposed of after his *Page 694 
death, instead of permitting it to pass under the statutes of descent and distribution, is no evidence of the invalidity of his will. If the deceased was mentally competent to make the will in question, and of this there is no dispute, he had a right to give his property to whomsoever he saw fit, regardless of who were his relatives or who would have taken his property under the statutes of descent and distribution. It was error for the court to permit counsel for contestants to argue the question before the jury against defendant's objection.
4. The trial court in his charge referred to the contestants as the natural recipients of testator's bounty and charged that,
"The disinheriting by the proposed will of all of Mr. Harris' relatives and its giving the property to one outside the family is not sufficient alone to permit you to break the will."
It was error to charge the jury as above indicated. In reBliss's Estate, ante, 389.
5. Experts are permitted to give their opinion, when properly qualified, upon the theory that by reason of their superior knowledge they may know things which ordinary witnesses do not. The opinion of an expert rises no higher than the facts upon which it is based. These facts must be detailed in order that the jury may judge of their existence or nonexistence, their truth or falsity. A witness ought not to be permitted to pass upon the force, effect, weight, or sufficiency of the facts detailed by him, or to usurp the functions of the jury. In reLembrich's Estate, 243 Mich. 39. In this case one Courtney, a claimed handwriting expert, was on the stand. He was permitted to testify, against defendant's objection, as follows: *Page 695 
"Q. Using the examination that you have made of the signatures of Frank R. Harris appearing on Exhibits 4 to 14, either Frank R. Harris or F.R. Harris as a basis, can you tell us whether or not the signature of Frank R. Harris appearing on Exhibit I is the genuine signature of Frank R. Harris?
"Mr. Lodge: Objected to as incompetent, irrelevant, and immaterial.
"The Court: I think he may answer.
"A. In making an examination of the signature of Frank R. Harris to the will, Exhibit 1, and a comparison of the standards on Exhibits 4 to 14, inclusive, I find that the signature on Exhibit 1 is not written by the same hand as the standards."
In re Foster's Will, 34 Mich. 21, it is said:
"Every one knows how very unsafe it is to rely upon any one's opinions concerning the niceties of penmanship. The introduction of professional experts has only added to the mischief, instead of palliating it, and the results of litigation have shown that these are often the merest pretenders to knowledge, whose notions are pure speculation. Opinions are necessarily received, and may be valuable, but at best this kind of testimony is a necessary evil. Those who have had personal acquaintance with the handwriting of a person are not always reliable in their views, and single signatures, apart from some known surroundings, are not always recognized by the one who made them. Every degree of removal beyond personal knowledge, into the domain of what is sometimes called with great liberality scientific opinion, is a step towards greater uncertainty, and the science which is so generally diffused is of very moderate value. Subject to cross-examination it may be reduced to the minimum of danger. In a jury-room, without any check or corrective, it would be very dangerous indeed. * * * *Page 696 
"In the cases of the Tracy and Fitzwalter Peerages, in 10 Clark and Finnelly, 154 and 193, this subject was discussed somewhat, and the danger of allowing testimony of handwriting from studies made expressly for the occasion was forcibly expressed. Mr. Best regards it as absolutely incompetent, and it has been so regarded in some instances by the courts. Best on Evidence (Intl. Ed.), 236."
To permit an expert witness in a case of contested handwriting to directly answer the question as to the genuineness of the signature in dispute is to permit him to invade the province of the jury, — to answer the very question which it is the duty of the jury to answer. The rule permitting experts, usually employed and paid to express desired opinions, has gone far enough. It should not now be extended so as to permit such experts to substitute their conclusions for those of the jury. It was error to permit the witness to do so.
6. The petition for the probate of the will was filed by the executor named therein on March 26, 1925. Afterward it is claimed the wife of proponent obtained some keys by which she was enabled to and did enter the house of the deceased. There was some testimony that at some time someone had entered the house and ransacked the same. There is no testimony connecting the proponent or anyone else interested in the case with this entering. The contestants were permitted to put all these facts before the jury and to argue inferentially that the will in question was a forgery and the genuine signatures of the deceased had been obtained by proponent's wife from the house by entering it with skeleton keys and searching for and obtaining the genuine signatures of the deceased which were copied on the will. Inasmuch as the petition had already *Page 697 
been filed in the probate court for the admission of the will to probate before any of these things are shown to have occurred, it was error to permit contestants to place the facts before the jury and to argue therefrom that the will was a forgery.
7. It was claimed by the contestants that the will was not executed at the office of Mr. Hicks, where it was claimed by proponent to have been executed. There was no competent evidence the testator was not at the office of Mr. Hicks at the time claimed, and no testimony except that of the expert Courtney, the signature upon the will was not the genuine signature of the testator. The opinion of an expert, or even his positive statement, erroneously permitted to be placed before the jury, when contradicted by the facts, is not entitled to serious consideration. The opinions of experts are of no weight when contrary to sworn testimony as to facts. Judgment reversed, with costs, and a new trial granted.
NORTH, C.J., and FEAD, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred in the result. The late Justice FELLOWS took no part in this decision. *Page 698