DeGROOT v. WINTER.

1. EVIDENCE—EXPERT OPINION.

> Expert opinion evidence is exception carved out of general rule confining witness to relation of facts, and is usually accomplished by means of hypothetical questions.

2. SAME—MALPRACTICE—WITNESS' CONCLUSION INADMISSIBLE ON ULTIMATE ISSUE.

> Although medical expert was properly permitted to express opinion as to whether defendant physicians were guilty of malpractice, it was error to permit him to give his conclusion upon ultimate issue of whether plaintiff's condition resulted solely from malpractice.

3. SAME.

> When result may or may not be occasioned by malpractice, expert medical witness invades province of jury when permitted to go beyond stating that it could, and in saying that it did, occasion result.
>
> NORTH, FEAD, and BUTZEL, JJ., dissenting.

Appeal from Ottawa; Miles (Fred T.), J. Submitted June 17, 1932. (Docket No. 143, Calendar No. 36,621.) Decided March 1, 1933.

Case by Dick DeGroot against William G. Winter and another for malpractice. Verdict and judgment for plaintiff. Defendants appeal. Reversed.

*Carl E. Hoffman* (*Leo W. Hoffman* and *Clare E. Hoffman*, of counsel), for plaintiff.

*Diekema, Cross & Ten Cate* and *L. W. Harrington* (*Douglas, Barbour, Desenberg & Schaeffer*, of counsel), for defendants.

---

On admissibility of opinion evidence as to cause of death, disease or injury, see annotation in L. R. A. 1915A, 1056, 1068.

Fead, J. (*dissenting*).  Plaintiff had judgment for $5,000 damages against both defendants, who are physicians, for negligent malpractice.  The principal claim of error is that defendants were entitled to a directed verdict.  The contention requires the testimony to be viewed most favorably to plaintiff.

June 6, 1930, plaintiff, 71 years old, broke his right leg between knee and hip.  On the same day, at the Zeeland Hospital, Dr. Boone, assisted by Dr. Ten Have, applied a Thomas splint, with traction by means of adhesive tape bandages and pulleys and weights.  The medical witnesses agreed that a fracture should be reduced as soon as the general condition of the patient will permit.  Dr. Boone testified that he reduced the fracture at the first treatment, but, under Dr. Ten Have's statement that the fracture was not reduced until July 10th, to his knowledge, the point became an issue of fact.

The medical witnesses agreed that proper local practice demanded X-ray photographs of the bone both before and after reduction of the fracture.  None was taken until June 19th, when the bandage slipped and the weights came off.  It was found that the ends of the bones overlapped some inches.  Dr. Boone testified that he put the ends back into position and again applied traction, but he took no X-ray photograph to determine the result.  Other physicians testified that the sense of touch is inadequate to reduce such a fracture in the fleshy part of the leg.

There was some testimony that X-ray photographs were not taken at the first treatment because plaintiff was in a state of shock.  The medical charts introduced by defendants contained no evidence of shock.  The testimony upon it was rather general.  The jury could draw an inference that, if the shock

was not sufficient to prevent reduction of the fracture, if it was reduced, it did not excuse the omission of X-ray examinations. And physicians testified that, while shock might require delay not exceeding a week or 10 days in reducing a fracture, X-ray examinations are imperative, especially when there is available a movable apparatus for them, as there was at Zeeland Hospital.

From June 19th to July 22d, Dr. Boone was on vacation, leaving plaintiff in care of Dr. Ten Have, with instructions to call Dr. Winter in case of difficulty. Dr. Winter was consulted on July 10th. Plaintiff was taken in an ambulance to Holland Hospital, which some doctors state was a bad thing to do. No X-ray examination was made to determine the condition of the leg before Dr. Winter began treatment. Dr. Winter pulled the leg into alignment, on a Hawley table, and, under fluoroscope, applied a body cast, and an X-ray was taken which showed the ends of the bone in excellent apposition but with a space between them. The cast remained until August 29th, when swelling developed, the cast was removed and a yucca-board splint, which furnishes neither immobilization of leg nor traction, was applied and remained, with one renewal, to November 1st, when defendants were relieved of further care of the case and plaintiff was taken to his home.

An X-ray photograph, taken August 27, 1930, disclosed the ends of the bones overlapping, with no evidence of healing nor the formation of bony union. A photograph, taken December 3, 1931, pictures the ends of the fracture overlapping three or four inches and considerable bony union, which however was not hard at the time of trial. The ends could be

felt by external examination and plaintiff has a re-stricted use of the leg.

The medical witnesses agreed that in such fractures the normal action of the muscles of the upper leg is to pull the fractured ends out of position and cause them to overlap. To overcome this strain and to tire the muscles, proper practice requires that immobility be attempted and traction be applied, by means of splint and weights or a cast and that it be maintained to the time of healing. To this there is the exception that, because a patient so treated is confined to bed, complications may develop, affecting his general health and it is good practice, if necessary, to sacrifice treatment of the leg to treatment of the patient. When the exception applies is a matter of judgment of the attending physician, but, of course, the judgment is to be exercised fairly and be based upon the condition of the patient.

Defendants claim the fracture was seasonably and properly reduced and that plaintiff's general health so deteriorated by confinement in bed that, in the exercise of good practice, they determined it necessary to remove the cast and build up the patient's general condition by giving him the better posture, freedom and exercise possible in a wheel chair. The testimony was in dispute as to plaintiff's physical condition and whether abandonment of traction on the leg was justified. It was conclusive that defendants did not pursue the customary and proper local practice of making X-ray examinations before and after reduction of the fracture. It raised issues of fact upon when the fracture was reduced and whether defendants were negligent in failing to maintain appliances to produce immobility and traction a proper length of time or their abandonment was nonactionable error of judgment, if error.

It is argued, however, that no harm came to plaintiff from the treatment, if improper, because no bony union or substance was found while he was under defendants' care, and, consequently, earlier reduction, periodical X-ray observations, and continuous traction would not have affected the result.

The record does not disclose when the bony union shown by the print of December 3, 1931, started, as defendants took no photograph after August 27, 1930. There was medical testimony that failure to promptly reduce a fracture and to retain the ends in apposition is a cause of delayed union, and that defendants' failure to treat the case in accordance with the proper practice could have produced the result. Consequently the jury could have found, under the testimony, that defendants' failure to follow proper practice caused the delayed union.

It is further contended that in fractures of this sort the outcome is largely a matter of chance and the result to plaintiff was as good as ordinarily could be expected from proper practice. Under the best treatment the bone may overlap and be permanently weakened. In fact, at least without an operation, precise alignment is hardly to be expected and much less is considered an excellent result. Nevertheless, the failure to use proper practice is an invasion of the right of the patient as he is entitled to whatever chances such treatment holds. And when a physician departs from it he hazards the judgment of a jury upon whether the departure worked injury to the patient when there is competent medical testimony that it could have done so and that a better result was possible from proper treatment.

The court did not err in denying the motion for directed verdict.

Complaint is made of the following question and answer:

"*Q.* * * * I will ask you whether or not in your opinion as a medical man the condition of that bone as disclosed by the X-ray taken at the Blodgett Hospital, was due to the failure to apply traction either by weight or by the use of a cast?

"*A.* * * * I would say the condition that was found in that X-ray was due to absence of traction and immobilization."

Counsel agree that, upon proper objection, the testimony would have been inadmissible under *DeHaan* v. *Winters,* 258 Mich. 293, since decided. Plaintiff contends proper objection was not made, and also asks us to overrule the *DeHaan Case,* which applied the general rule that opinion evidence of an ultimate fact is an invasion of the province of the jury.

The general rule is well settled as applied to physical causes, the effect of which is within the realm of lay knowledge, but its application to the cause of death, disease, or injury has been attended by much confusion of judicial opinion. Some courts apply it as a rule of thumb, while others permit its modification in circumstances where expert opinion would be of aid to the jury in finding the fact. L. R. A. 1915 A, 1068, note; 22 C. J. p. 667; 11 R. C. L. pp. 583, 613.

In the *DeHaan Case* this court conceived that the question called for an opinion upon the ultimate issue of the case, the malpractice of defendant. So confined, I am still in accord with the ruling. However, the concession of counsel that it applies to the present situation indicates that the rule needs further consideration. Without discussing whether the cause of the injury as stated in the above answer is an intermediate or ultimate fact, I do not think the

incompetency of opinion evidence thereof should be made an inflexible rule in this State.

Prior decisions of this court do not require such ruling. At first blush, *Jones* v. *Village of Portland,* 88 Mich. 598 (16 L. R. A. 437), upon which the *DeHaan* ruling was planted, would seem to be controlling, but closer examination demonstrates that it is not in point. The medical opinion of the cause of the injury there condemned stated the cause as a fall on the sidewalk, a physical fact provable by lay witnesses. The syllabus reads:

"It is error to permit a witness to testify to his conclusion based upon facts in evidence before the jury from which they are as competent to draw a conclusion as is the witness."

Also, it is evident from the answer of the witness and the cases cited that he was basing his opinion upon the history of the case which had been told him by plaintiff, which he had already related and which this court had held incompetent. The only relevant point in the cited case of *Dundas* v. *City of Lansing,* 75 Mich. 499 (5 L. R. A. 143, 13 Am. St. Rep. 457), was that a physician cannot testify to what his patient told him of the cause of the injury to prove such disputed fact. *Tice* v. *Bay City,* 78 Mich. 209, also cited, had no relevant point.

The general rule has a proper application to facts and causes and conditions and connections within the knowledge and experience of laymen and which the jury is competent to appraise. But because the purpose of the opinion evidence is to aid the jury, when the inquiry is in a realm outside the ken of laymen, the rule should have such application as will permit expert opinion to serve its purpose. So, where the condition, the various possible causes and their effect upon the condition are outside lay knowl-

edge and are peculiarly within the realm of expert learning and experience, especially where they rest in opinion evidence or the ultimate fact must be found from a balancing of opinions, it is reasonable that qualified experts be permitted to aid the jury by their opinions of the cause of injury.

It is hypertechnical to say that an opinion of an ultimate fact is an invasion of the province of the jury in a case where the essential intermediate facts rest in expert opinion and the true relation between them also rests in opinion. In any event, there is no real invasion of the functions of the jury because the jury has the power to disregard opinions, and, like other opinion evidence, their weight rests upon the finding of the jury as to the qualifications and credibility of the witnesses.

Such exceptions of the rule contain no elements of danger to justice. Without fervent approval, this court commented upon the shadowy line between an opinion of what did cause and what could have caused a condition in *People* v. *MacGregor,* 178 Mich. 436, and *Cord* v. *Pless,* 216 Mich. 33, 43, in which physicians were permitted to express an opinion upon the cause of death or injury. Also, it is well known that expert witnesses, so disposed, have no difficulty in impressing the jury with their contentions. See *Hull* v. *Railway,* 158 Mich. 682, 686. A fair witness, seeking to obey the rules of evidence, should have an equal chance with one who resorts to subterfuges.

Nor does the modification introduce a foreign element into our law of evidence. In cases as important as the proving of wills, even laymen are permitted to express an opinion of the competency of testator. Handwriting experts may give their opinion of the authenticity of documents. And there are numerous cases where opinion evidence of causes and effect

have been sanctioned, a few of which are: *People* v. *Foley*, 64 Mich. 148; *Rogers* v. *Youngs*, 252 Mich. 420; *Logan* v. *Agricultural Society*, 156 Mich. 537; *McDonald* v. *Railway*, 144 Mich. 379; *Holman* v. *Railway Co.*, 114 Mich. 208; *Smith* v. *Railway*, 155 Mich. 466.

We hold that where the connection between the cause and condition is a matter of specialized knowledge not within the information of laymen generally, an expert may express his opinion of the possible, probable, or actual cause of the condition if the testimony be otherwise competent. Such exception, like the parent rule, ought not to be a rule of thumb. Like many other rules of evidence, its application necessarily must depend upon the judgment of the court under the particular circumstances, and it is conceivable that the question may sometimes be so close as to rest upon sound discretion.

Lest there be misunderstanding, perhaps a few words in comment on Mr. Justice WIEST's opinion in this case should be said. I assume that the profession is familiar with the distinction between the expression of an opinion by a witness and his stating his conclusion as a fact, and with the foundation which must be laid in each case of opinion evidence, and so do not discuss them. I also assume that the bar knows that the issue is not whether the patient's condition is caused solely by malpractice, because damages were recoverable although only part of the disability was so caused. The rule in the *DeHaan Case* has no such sanctity of age, effect upon vested rights, support in authority in this State, or subsequent judicial application to circumstances as should deter this court from confining it to its proper sphere and indicating proper exceptions to it. The testimony at bar was competent.

We discover no error in connection with the other expert testimony. Nor do we find prejudicial error in remarks of court or counsel.

Error is alleged on instructions to the jury, principally by way of wresting short statements from the charge and isolating them. As a whole, the charge amply presented the contentions of defendants and protected their rights. Only one instruction needs special mention:

After charging, in effect, that where there is more than one method of approved treatment, the attending physician, in good faith and in the exercise of ordinary care, skill, and knowledge, may exercise his best judgment and adopt one of such approved methods without being guilty of negligence, although another method might be claimed to be more successful, the court said:

"Provided, of course, that he follows the method and treatment usually followed by the average physician possessing and exercising that degree of skill and knowledge, possessed and exercised by physicians in that and similar localities."

The record contained a certificate of the circuit judge to the effect that the stenographer's minutes are incorrect and that the court read to the jury the instruction as follows:

"Provided, of course, that he follows one of the methods and treatment usually followed," etc.

We know of no practice which permits the filing of such certificate in contradiction of the bill of exceptions as settled and signed. However, from the whole instruction, as well as from other portions of the charge, it is incredible that the jury was misled by the clause as it appears in the record. In view of the context, the word "the" before "method" ordi-

narily would be heard as "a" and the instruction as received by the jury would be correct.

The mortality tables were admitted in evidence, but, for some reason undisclosed, were withdrawn from consideration of the jury. The tables are not conclusive, and the jury may find expectancy of life from testimony of age, physical condition, medical opinion, and their own observation. We cannot say the verdict was excessive.

The brief for plaintiff set up references to testimony in a different suit and quoted at length from pamphlets not in evidence. Probably the better practice would be to strike the brief from the files and order a new one printed, but we think the situation may be met by a warning against repetition and by denying plaintiff costs for printing the brief.

Judgment should be affirmed, with costs except as above.

NORTH and BUTZEL, JJ., concurred with FEAD, J.

WIEST, J. April 4, 1932, in a malpractice case against defendant Winter, in which present counsel represented the parties and argued the question, this court held that it was error to do the identical thing my Brother now sanctions. *DeHaan* v. *Winter*, 258 Mich. 293. The question was then fully briefed, argued orally by present counsel, considered by the court, and no rehearing was sought. Counsel for plaintiff now urges error in our former holding.

Expert opinion evidence is an exception carved out of the general rule confining a witness to a relation of facts, and is usually accomplished by means of hypothetical questions.

Upon the issue of whether defendants were guilty of malpractice by commission or omission the ex-

pert could and did give opinion evidence. Upon the ultimate issue of whether plaintiff's condition resulted solely from malpractice, the expert should not have, but did give his conclusion as to a fact, not necessarily following malpractice, and in dispute. When a result may or may not be occasioned by malpractice, an expert medical witness invades the province of the jury when permitted to go beyond stating that it *could,* and in saying that it *did,* occasion the result. Such an opinion is but the private judgment of the witness and not competent evidence. Whether the alleged malpractice could occasion the result complained of was one of science only. Whether malpractice did occasion such result was in controversy, and, therefore, not one of mere science. When the facts are admitted and not in dispute, the question, if answered, may be considered one of science. But when a result could have been occasioned by one of two or more causes, the ultimate fact of which cause occasioned the result is for determination by the jury, and a medical expert may not, in case of conflicting evidence, invade the province of the jury and testify that the result was in fact occasioned by one cause only.

Rules of evidence should have stability. The rule violated in this case was early announced by this court, repeatedly followed, supported by the weight of authority, has led to no injustice, and has kept medical experts from invading the province of the jury and should be maintained.

My Brother's opinion overrules *Hitchcock* v. *Burgett,* 38 Mich. 501; *People* v. *Hare,* 57 Mich. 505; *Jones* v. *Village of Portland,* 88 Mich. 598 (16 L. R. A. 437); *In re Harris' Estate,* 247 Mich. 690; *DeHaan* v. *Winter, supra.* The present rule is supported by the admitted weight of authority.

In *Jones* v. *Village of Portland, supra,* the ultimate issue was whether claimed injuries were caused by a fall. In the case at bar the ultimate issue was whether plaintiff's disability was caused by malpractice.

In *Lacas* v. *Railway,* 92 Mich. 412, 417, it was said of medical opinion testimony:

"The testimony given in answer to the above-quoted question was proper, as showing the character of the cause which might have produced the injury. The question did not, as was the case in *Jones* v. *Village of Portland,* 88 Mich. 598 (16 L. R. A. 437), call for the opinion of the witness on the whole case. The extent to which the ruling went was to permit a doctor to state whether a cause which it was alleged existed would, in his opinion as a medical man, be sufficient to produce a condition which it was claimed resulted from this cause."

My Brother does not think that the *Jones Case* excludes an opinion by an expert as to the ultimate fact to be determined by the jury. The *Jones Case,* in my opinion, is directly to the point, and I am confirmed in this by an examination of the record, and my view of that case is shared by all text writers and digests on the subject of expert opinion evidence, published since that holding.

The present condition of plaintiff's leg is easily traced to the break, but whether the present condition is the result of malpractice or otherwise was an issue of fact for the jury and not of science for medical experts.

In *Justis* v. *Union Mutual Casualty Co.,* — Iowa, — (244 N. W. 696), the ultimate fact in issue was whether disability of the plaintiff resulted from stomach ulcers or whether his disability was from bodily injuries. That case is directly in point, and I

make liberal quotations therefrom. The court held, quoting syllabus (N. W.):

"Admission of expert testimony by medical witnesses in respect to their opinion as to the cause of insured's condition held erroneous as invading province of jury.

"Expert may not be permitted to invade province of jury and express opinion as to ultimate facts."

The court stated:

" 'The general rule prevailing in this State is to the effect that such a question is not proper, for it permits the witness to decide the whole case, and leaves nothing for the jury to do except to believe or disbelieve the witness and render its verdict accordingly.' * * *

"In *Eclipse Lumber Co.* v. *Davis,* 196 Iowa, 1349, 1364 (195 N. W. 337, 343), this court said: 'But it is a well-recognized rule that an expert cannot be permitted to express an opinion on the ultimate question to be determined by the jury, and which must inhere in the verdict.' * * *

"In *Budde* v. *National Travelers Benefit Association,* 184 Iowa, 1219, 1226 (169 N. W. 766, 769), this court said: 'Of course, an expert may not express an opinion as to what produced the kink in the bowel, as was, in substance, asked Dr. Smith, for that was precisely what the jury were to determine, and was not the subject of expert evidence.' * * *

"In *Sever* v. *Railway Co.,* 156 Iowa, 664, 668 (137 N. W. 937, 938, 44 L. R. A. [N. S.] 1200), this court, after citing many cases, said in reference to medical testimony: 'These cases and many others which might be cited draw a sharp distinction between a question calling for an opinion by an expert as to what might or might not have caused an injury and one calling for an opinion as to what in fact did cause it.' "

Also "In *Martin* v. *Des Moines Edison Light Co.,* 131 Iowa, 724, 739 (106 N. W. 359, 364), this court said: 'It is an accepted rule that, while experts may testify as to what in their opinion may or may not have been the cause of a given result or condition, it is not permissible for them to give their opinion as to the ultimate fact which the jury is organized to determine.'    *    *    *

"In *Sachra* v. *Town of Manilla,* 120 Iowa, 562, 567 (95 N. W. 198, 200), this court said: 'What in fact causes a wound or injury is a question for the jury, but what might or might not have caused it is a matter of expert testimony.'

"To further quote from our unbroken line of cases on the subject would unduly extend this opinion. The foregoing cases announce the definite and certain rule which has obtained in this State for many years. It has been announced in scores of cases and is well understood by the great majority of the bench and bar. It is based on sound reasoning and works substantial justice. It is completely in harmony with our system of jurisprudence.

"In a case of this kind, it may become highly important that an expert shall enlighten the jury upon subjects of a technical or scientific character. The expert may be permitted, under certain circumstances, to express an opinion as to whether, in his judgment, a certain condition, arising in a scientific or technical field, may have been brought about from certain causes, but never may the expert be permitted to invade the province of the jury and express any opinion as to the ultimate facts to be determined by the jury. This rule has so often been announced by this and other courts that further discussion seems unnecessary."

I am not impressed by the reasoning that, because an expert witness may be cunning enough to transgress a rule of evidence, the rule should be leveled to the grade of the transgressor. The rule in the *DeHaan Case, supra,* either applies or has no ap-

plication at all. If it applies it should control. What is meant by confining the rule there applied to its proper sphere? What is that sphere? There we held the opinion was incompetent. Here, by confining the rule there applied "to its proper sphere," my Brother holds the opinion competent. If this prevails, what is the rule from now on?

In cases of insanity, mental competency, etc., the expert is not passing upon the cause but upon a condition evidenced by manifestations. In the case at bar, the condition of plaintiff's leg is unquestioned, but the cause of that condition may have been occasioned by malpractice or otherwise, and an opinion by an expert that it was caused by malpractice is a weighing of evidence by the expert and an expression of the result. On questions of science or professional skill one may be an expert, but on a question of fact as to whether one rather than another cause produced a condition, he is not permitted to venture his conclusion.

Every text writer on the subject of expert opinion evidence states that the weight of authority excludes such testimony as here admitted, and practically all cite *Jones* v. *Village of Portland, supra,* as a leading authority on the subject.

"As the opinion evidence rule is intended to provide against the mischief of invasion of the province of the jury, a court should as far as possible exclude the inference, conclusion, or judgment of a witness as to the ultimate fact in issue, even though the circumstances presented are such as might warrant a relaxation of the rule excluding opinion but for this circumstance." 22 C. J. p. 502.

In 22 C. J. p. 666, it is said of an expert medical witness:

"Statements have also been received from such a witness as to whether certain detailed occurrences

would be a natural, sufficient, probable, or possible cause of a certain physical result, or of death, although the witness cannot state his opinion whether they actually produced it''—

citing, among other authorities, *Jones* v. *Village of Portland, supra,* and *People* v. *Hare,* 57 Mich. 505.

The following from 3 Chamberlayne, Modern Law of Evidence, § 2495:

''For the protection of the province of the jury, it is a general rule that an expert cannot be asked to decide as to the existence of a fact which is controverted upon the evidence. * * * It is the province of the witness to determine what, *assuming* certain facts to be true, they mean in terms of the science, art, trade or calling with which the witness is familiar. * * * The skilled witness testifying as an expert will not be allowed to declare his judgment as to how far the evidence in the case establishes the existence of a given fact. * * * All this is for the jury.''

3 Chamberlayne, Modern Law of Evidence, § 1999:

''A reasonable protection of the province of the jury requires that except in case of an adequate forensic necessity, the skilled medical observer should not be permitted to take the step from announcing possible or probable causes of observed results to declaring *actual.* He may properly state what could or might have caused the injury, not what did so.''

The following from 3 Jones, Commentaries on Evidence (2d Ed.), § 1321:

''Whatever liberality may be allowed in calling for the opinions of experts, such witnesses must not be permitted to usurp the province of the court and jury by drawing those conclusions of law or fact upon which the decision of the case depends. Al-

though this view has been earnestly criticized, it is sustained by the undoubted weight of authority. It is, moreover, founded in practical necessity as well as theory; for in many cases trials would become farcical if zealous experts were allowed to express direct opinions upon the very issue to be tried.''

"The object of all questions to experts should be to obtain their opinion as to the matter of skill or science which is in controversy, and at the same time to exclude their opinions as to the effect of the evidence in establishing controverted facts.'' 3 Jones, Commentaries on Evidence (2d Ed.), § 1323.

In *Kimbrough* v. *Railway Co.,* 272 Ill. 71 (111 N. E. 499), the court stated:

"A physician may be asked whether the facts stated in a hypothetical question are sufficient, from a medical or surgical point of view, to cause and bring about a certain condition or malady, or he may be asked whether or not a given condition or malady of a person may or could result from and be caused by the facts stated in the hypothetical question, but he should not be asked whether or not such facts did cause and bring about such condition or malady.''

I do not accept my Brother's postulate that, because the jury may disregard such opinion evidence "there is no real invasion of the functions of the jury.'' Rules of evidence are intended to keep expert witnesses within bounds. Suppose the jury accepts the *ipse dixit* of the witness and shifts the ultimate result to his conclusion, then there is an accomplished invasion without record or remedy.

In principle, the rule which has so long prevailed in this State is right, and the judgment should be reversed, with costs to defendants.

McDonald, C. J., and Clark, Potter, and Sharpe, JJ., concurred with Wiest, J.