174 So.2d 45 (1965)
Wilma BLACKWELL, Appellant,
v.
SOUTHERN FLORIDA SANITARIUM AND HOSPITAL CORPORATION, a Florida corporation not for profit, d/b/a Hialeah Hospital, Appellee.
Wilma BLACKWELL, Appellant,
v.
H.C. NELSON, Jr., M.D., Appellee.
Nos. 64-392, 64-393.
District Court of Appeal of Florida. Third District.
April 20, 1965.
*46 Welsh, Cornell, Pyszka & Carlton and Charles T. Kessler, Miami, for appellant.
Green & Hastings and Irma Robbin Feder, Miami, for appellee Nelson.
Taylor, Brion, Buker, Hames & Greene, Miami, for appellee Southern Florida Sanitarium.
Before BARKDULL, C.J., and CARROLL and HENDRY, JJ.
HENDRY, Judge.
Plaintiff appeals summary final judgments entered in favor of defendants Dr. H.C. Nelson and Southern Florida Sanitarium and Hospital Corporation, not for profit, d/b/a Hialeah Hospital, in cases wherein negligence and malpractice were charged.
Plaintiff brought these suits seeking damages resulting from the death of her husband. The facts giving rise to these cases can be summarized as follows: Plaintiff's decedent was hospitalized in the defendant hospital from November 22, 1960 through November 27, 1960. He had entered the hospital under a Dr. Anderson's care for physical complaints relating to his digestive tract and gall bladder. On November 23, 1960, during the course of his confinement in the hospital, an electrocardiogram was taken.
Also, during this period decedent was introduced to Dr. Nelson by Dr. Anderson. Dr. Anderson then stated that decedent was going to need surgery, and that he, (Dr. Anderson) would recommend Dr. Nelson. In January, 1961, decedent visited Dr. Nelson at the latter's office and complained of the same thing that required the November, 1960 hospitalization. Dr. Nelson concluded that decedent had a severe and persistent inflammation of the gall bladder and recommended hospitalization for the removal of the gall bladder.
On January 26, 1961 decedent was again admitted to the Hialeah Hospital, this time as Dr. Nelson's patient, for the contemplated surgery. Among the preoperative procedures Dr. Nelson ordered an electrocardiogram. This electrocardiogram was interpreted by Dr. Shalloway and the results made known to Dr. Nelson. Dr. Shalloway did not compare this second electrocardiogram with the earlier one taken in November, 1960. In fact, he was not aware that an earlier one had been taken. Although there are some variations in the data revealed by the two electrocardiograms, Dr. Nelson was aware of the variations between the two electrocardiograms, and in his overall evaluation concluded that decedent's condition did not indicate any heart trouble which would interfere with the gall bladder operation. The operation was performed by Dr. Nelson and some two days *47 later appellant's husband died as a result of a heart attack caused by the "strain of convalescence superimposed upon a weakened heart." An autopsy performed by Dr. Justi revealed that decedent had suffered heart damage prior to the operation and within a month of his death. Had Dr. Nelson known of this more recent damage to the heart he would have postponed the operation.
In his deposition, Dr. Nelson affirmatively states that prior to surgery he considered the result of both electrocardiograms in addition to the clinical observations, and in his opinion, the variations in the two electrocardiograms did not indicate any heart trouble which would interfere with the contemplated surgery. He further states that a comparison of the two electrocardiograms did not wave a "red flag" so as to require further tests. Dr. Nelson indicated that his going ahead with the surgery (all things considered) reflects current practice in the community, and that he believed any surgeon would do the same.
Having carefully reviewed the record on appeal and the briefs and arguments of counsel, we conclude that the trial judge was correct in entering summary final judgments for the defendants.
Plaintiff's claim against defendant Dr. Nelson is grounded on alleged malpractice as evidenced by the doctor's going ahead with elective surgery under the circumstances as above outlined.
The record discloses insufficient evidence to raise a genuine issue as to malpractice. At most, the evidence suggests the possibility that Dr. Nelson made an honest error of judgment but, as was stated in Bourgeois v. Dade County,[1]
"Physicians are not to be held liable for honest errors of judgment. They are allowed a wide range in the exercise of their judgment and discretion. To hold one liable it must be shown that the course which he pursued was clearly against the course recognized as correct by his profession. * * *"
The plaintiff's claim against the defendant hospital is predicated upon the hospital's failure to provide the first electrocardiogram to Dr. Shalloway for the purpose of interpreting the results of the second electrocardiogram in connection therewith. There is no evidence in the record to show that a comparison of the two electrocardiograms would have indicated a myocardial infarct, in fact, the evidence is to the contrary, as the operating surgeon was, prior to surgery, aware of the differences in the two electrocardiograms. Hence, it is not shown that there was a casual connection between the hospital's failure to provide the report and the ultimate injury. In fact, the acts of the hospital complained of were not shown to be a violation of the standard of care imposed upon it.[2]
As to the defendant doctor, it is our view that this record contains no medical testimony tending to show any malpractice. Moreover, it is our further view that absent such evidence, a jury would not in this case have been warranted on passing on the issue based on ordinary intelligence, sense, and judgment, without the aid of such expert testimony.[3]
Accordingly, the judgments appealed are affirmed.
Affirmed.
NOTES
[1] Fla. 1956, 99 So.2d 575, 577, 72 A.L.R. 2d 391.
[2] Hunt v. Gerber, Fla.App. 1964, 166 So.2d 720.
[3] Atkins v. Humes, Fla. 1959, 110 So.2d 663, 81 A.L.R.2d 590.