301 So.2d 805 (1974)
Robert H. PIERCE, D.O., and Pacific Indemnity Company, a California Corporation, Appellants,
v.
James W. SMITH and Myra Smith, His Wife, Appellees.
No. 73-479.
District Court of Appeal of Florida, Second District.
September 27, 1974.
Rehearing Denied November 6, 1974.
*806 T. Paine Kelly, Jr., MacFarlane, Ferguson, Allison & Kelly, Tampa, for appellants.
George N. Meros and Peter N. Meros, Meros, Wells, Edman, Meros & Rouse, St. Petersburg, for appellees.
BOARDMAN, Judge.
This is a medical malpractice action. The plaintiffs sued Robert H. Pierce, D.O., and Pacific Indemnity Co., his malpractice insurance carrier, for the complications of a bilateral vasectomy performed upon James W. Smith. The defendants answered the allegations of the complaint asserting defenses of general denial and contributory negligence and, in addition, affirmative defenses alleging that Dr. Pierce exercised the skill and diligence of a general osteopathic physician and surgeon practicing in the community and in similar communities. The jury returned a $40,000 verdict for Mr. Smith and a $5,000 verdict for Mrs. Smith. The trial judge, after hearing posttrial motions, in due course rendered judgment in favor of the plaintiffs in the sums mentioned above. This timely appeal by the defendants followed.
The important questions presented on appeal relate to the legal sufficiency of the evidence to support the verdict and the effect of certain remarks made by counsel in behalf of plaintiffs in the course of his closing argument to the jury.
The defendants urge that the plaintiffs cannot recover because of their failure to present expert testimony to substantiate the claim of malpractice. Ordinarily, expert testimony is essential to support an action for malpractice against a physician or surgeon. See 81 A.L.R.2d 590. However, in certain cases involving a charge of negligence in administering an approved medical treatment, as distinguished from a charge based upon an incorrect diagnosis or the adoption of the wrong method of treatment, Florida juries have been permitted to determine liability without the necessity of expert testimony. Atkins v. Humes, Fla. 1959, 110 So.2d 663; Furnari v. Lurie, Fla.App.4th, 1971, 242 So.2d 742. Thus, in Atkins the Supreme Court said:
"... jurors of ordinary intelligence, sense and judgment are, in many cases, capable of reaching a conclusion, without the aid of expert testimony, in a malpractice case involving a charge of negligence in the application or administration of an approved medical treatment... ."
The criteria seems to be whether or not the jurors through the exercise of common sense could reasonably conclude that the pertinent facts speak for themselves as evidence of medical negligence. Cf. Dillmann v. Hellman, Fla.App.2d, 1973, 283 So.2d 388. We believe that the facts of the instant case, when construed in the light most favorable to the plaintiffs, were sufficient to meet this standard.
Mr. Smith had a prior history of bleeding, of which the doctor was aware. According to Smith, he was allowed to leave the doctor's office after the operation while he was still bleeding. He returned two days later in a swollen condition and the bleeding was continuing. Even then Smith said the doctor only recommended the application of ice packs and prescribed an antibiotic. The several doctors who testified for the defendants admitted that Smith's ultimate loss of a testicle was caused by excessive bleeding. The jury had the right to conclude that Dr. Pierce had failed to take appropriate precautions to control the bleeding under the circumstances.
In spite of the fact that the plaintiffs made a case sufficient to go to the jury, we are constrained to reverse because of the prejudicial and inflammatory effect of closing argument made by the plaintiffs' counsel. The remarks which occasioned the defendants' motion for mistrial were as follows:
"... Those doctors were called here at the instance of the defendant *807 Pierce and Pacific Indemnity Insurance Company and Jim Smith does not have the resources nor the ability to go out and compete with Dr. Pierce and the Pacific Indemnity Insurance Company in bringing expert doctors to you. That's just impossible for him to do...."
* * * * * *
"... [A]n adverse verdict would not affect Dr. Pierce's ability to practice and he knows that's absolutely true. This has got nothing to do with his right to practice medicine. An adverse verdict will only call for his insurance company to pay the verdict that is imposed against him. It is not to punish him... .
* * * * * *
"... when this is over, you all can go back to living your normal lives and the Court can go about conducting its duties. Mr. Kelly can go back to defending doctors and insurance companies and we can all walk away from this case and forget it. But there are two people in this courtroom who can't walk away and forget if... ."
Prior to Shingleton v. Bussey,[1] any purposeful reference to insurance coverage when the subject was irrelevant could be expected to lead to reversal. Carl's Market, Inc. v. Meyer, Fla. 1953, 69 So.2d 789; Seminole Shell Co. v. Clearwater Flying Co., Fla.App.2d, 1963, 156 So.2d 543. Juries may now be apprised of the existence of the insurance carrier as a real party in interest. Stecher v. Pomeroy, Fla. 1971, 253 So.2d 421. Yet, no Florida court has gone so far as to say that counsel is now permitted to suggest to the jury that insurance coverage will be available to pay any judgment which might be awarded against the insured defendant. In fact, the Supreme Court has held that the jury should not be told of the amount of the insurance coverage. Stecher v. Pomeroy, supra. The quoted arguments of the plaintiffs' attorney were clearly improper.[2]
The precise question remaining is whether the error mandates a reversal of the case. The plaintiffs rely upon Stecher for the proposition that the error was harmless. As we read Stecher, our Supreme Court held that the mention of insurance policy limits to the jury and the failure of the trial judge to give an instruction to disregard them were harmless error "where an examination of the entire record reflects a tone which indicates in no wise any adverse effect upon the jury's verdict."
The plaintiffs also cite the case of Josey v. Futch, Fla. 1971, 254 So.2d 786, originating out of this court,[3] as being controlling. In Josey, supra, our Supreme Court set forth certain standards for determining whether the criteria enunciated in Stecher, supra, pertaining to mentioning insurance policy limits to the jury, had been violated. The case was remanded to this court for reconsideration in light of those standards. In applying the standards to the facts of that case, this court concluded that the error was a harmless one.[4]
We have no quarrel with these decisions but do not believe them to be dispositive of the issues presented in this case. Here, the issue of liability was extremely close. Five doctors testified, in essence, that Dr. Pierce had done no wrong. The insurance limits were not in evidence, and there was no indication that they were high enough *808 to pay any particular verdict, even if counsel had been entitled to refer to insurance in the first place. The unwarranted remarks were obviously calculated to and, for aught we know, did influence the jury verdict with respect to both liability and damages. In our view, the cumulative effect of the objected-to remarks of plaintiffs' counsel in his closing argument was such as to appeal to the passion or prejudice of the jury. All of the parties to this or any other cause of action are entitled to a fair and impartial trial. In view of the irrelevant remarks of such an inflammatory and prejudicial nature, we believe that the defendants did not receive such a trial. See Utica Mutual Insurance Co. v. Clonts, Fla.App.2d, 1971, 248 So.2d 511.
From a review of the entire record, we cannot hold this error to be harmless.
Reversed and remanded for a new trial on all issues.
McNULTY, Acting C.J., and GRIMES, J., concur.

ON PETITION FOR REHEARING
BOARDMAN, Judge.
The appellees petitioned for a rehearing on the ground that our opinion is contrary to the recent ruling of the Supreme Court of Florida in Allred v. Chittenden Pool Supply, Inc., Fla. 1974, 298 So.2d 361.
We have reviewed Allred, supra, and conclude that it is factually distinguishable from the case sub judice. In Allred, the complained of comment by counsel for the plaintiff in his closing argument:
"`..., and that is why a permanent injury makes Liberty Mutual Insurance Company fight so hard....'"
is not of such magnitude as to imply a plea of passion or prejudice. In the cited case the evidence adduced in plaintiff's case was overwhelming on the issue of negligence. Here it is not. In the cited case no statement can be said to have been made implying that the insurance company will pay the entire amount of the verdict as in this case.
McNULTY, C.J., and GRIMES, J., concur.
NOTES
[1] Fla. 1969, 223 So.2d 713.
[2] Counsel's first quoted comment also constituted an impermissible appeal to sympathy predicated upon economic disparity. Tampa Transit Lines v. Corbin, Fla. 1953, 62 So.2d 10; Seaboard Airline Ry. Co. v. Smith, 53 Fla. 375, 43 So. 235 (1907).
[3] Futch v. Josey, Fla.App.2d, 1971, 247 So.2d 491.
[4] Futch v. Josey, Fla.App.2d, 1972, 263 So.2d 240.