117 So.2d 210 (1959)
GRONER-YOUNGERMAN, INC., As Trustee, Appellant,
v.
E.O. DENISON, Appellee.
No. 1275.
District Court of Appeal of Florida. Second District.
December 9, 1959.
Rehearing Denied January 27, 1960.
*211 John R. Gould, Vero Beach, and Marvin W. Lewis, Shorenstein & Lewis, Miami Beach, for appellant.
J.M. Sample, Fort Pierce, for appellee.
ALLEN, Chief Judge.
This is an appeal from the granting of plaintiff's motion for summary decree of foreclosure, and subsequent order confirming the sale of the subject lands situated in St. Lucie County.
The complaint alleged the execution and delivery of the note and mortgage on June 28, 1957. It also alleged that the first installment became due on June 28, 1958, in the amount of $4,575 which included 5% per annum interest on the principal sum of the note in the amount of $60,000; that the mortgage contained a provision for a 20 day grace period; that defendant failed to pay the annual installment on or before its due date; and that plaintiff, on July 20, 1958, notified the defendant that it exercised its option to declare the full amount of the note and mortgage due and payable immediately. The complaint also alleged that certain fire and extended coverage insurance in the amount of $30,000, which the defendant covenanted to keep in force and effect, was not paid; that the insurance had been cancelled, and that, in order to reinstate the insurance, plaintiff had to pay the premium in the amount of $503.88. The complaint concludes with the prayer that an accounting be had; that the mortgage be foreclosed, that a receiver be appointed, and that plaintiff recover the unpaid principal of $60,000 plus interest, insurance premium, reasonable attorney's fees and court costs.
The defendant filed an answer and counterclaim in which it admitted the execution and delivery of the note and mortgage, but denied that it knew that the mortgage contained a 20 day grace period. The defendant specifically denied that it failed to pay the annual installment when due, but stated that it was misled by the plaintiff as to the time when the payment was to be made. The defendant also denied the allegations of the complaint in reference to defendant's failure to maintain the required fire and extended coverage insurance policy.
As an affirmative defense the defendant alleged that the note and mortgage was prepared by the law firm of Denison and Lewis, of Fort Pierce, and more specifically by Royce R. Lewis, a partner in the firm; and that at the time these instruments were drawn, this firm represented the defendant and retained possession of the mortgage documents. The answer and affirmative defense pleading then stated that prior to the time when the installment became due and within the grace period, the defendant requested information from its attorneys, the above mentioned firm, as to the time when the payment was to have been made and the extent of the grace period; and that as a result of this inquiry, defendant was given to understand that the note and mortgage contained a thirty day grace period. The defendant alleged that it relied upon this information, and to the surprise of the defendant, it was informed on or about the 21st day of the grace period that the note and mortgage had a twenty day grace period and that defendant was in default. The affirmative defense then asserts that immediately upon receipt of such notice, defendant forwarded its check to the plaintiff in the amount of $4,575 covering the principal installment due together with accrued interest. The defendant further alleged that it was at all times ready, willing and able to pay the principal and interest when due, or within the thirty day grace period, and would have made the payment prior to the 20th day, except for the information furnished to defendant by plaintiff or his agent.
It was further stated that the check was forwarded to plaintiff on or about the 22nd *212 day of the grace period, but that plaintiff returned the check to the defendant, thus refusing to accept it.
Upon request of the plaintiff, a receiver was appointed to care for the property during the pendency of the suit.
Thereafter plaintiff filed a motion for summary judgment, claiming that there was no issue of fact to be determined. The plaintiff alleged in this motion that the defendant had failed to pay the insurance premium required by the mortgage; that Stanley Sirotin, defendant's "Agent, Officer and/or Director" was given a copy of the warranty deed conveying the property, who, in turn, gave the mortgage deed to plaintiff together with the note secured thereby; and at that time Stanley Sirotin was clothed with full indicia of authority to act for and on behalf of the defendant. Plaintiff's motion also asserted that Sirotin later acknowledged that the plaintiff "had not informed defendant that the mortgage contained any provision for more than the twenty days of grace as set forth in said note and mortgage."
It appears from the record that at the time of the execution of the note and mortgage, Sirotin, a real estate broker, represented the defendant in the transaction. However, Sirotin no longer is affiliated with defendant. When the defendant was informed by plaintiff that the mortgage was in default, the defendant apparently contacted Sirotin, who, in turn, telephoned plaintiff regarding the length of the grace period. Thereafter plaintiff wrote a letter to Sirotin and then Sirotin answered this letter by a letter which is attached to plaintiff's motion for summary decree. This letter provides in part:
 "Mr. E.O. Denison
 "Denison Building
 "Fort Pierce, Florida
 "Dear Ed:
"I have your letter of July 23, 1958. At the present time I am confused about this entire situation. You may recall when I talked to you about the installment payment due on the mortgage I discussed the matter of a grace period. You told me that the installment was due on June 28, 1958 and that there was no grace period.
"After I talked with you, I gave further thought to the question of a grace period because I was under the impression that there was a 30-day grace period. I remembered that the mortgage and note had been drawn by Royce. I was advised by Royce that he had drawn the note and mortgage and that there was a grace period. I was not certain about the number of days of the grace period. As I advised you, it was my impression that the note and mortgage contained a 30-day grace period. Unfortunately, if I did have a copy of the note and mortgage, it appears to have been misplaced.
"When I received your letter of July 20th stating that there had been a default and that the default had continued for 20 days, I contacted you at once and, in accordance with our discussions, I immediately sent you a check in the amount of $4,575 in full payment of the first installment, including interest."
There was also attached to plaintiff's motion affidavits as to what would be a reasonable attorney's fee in the foreclosure action.
An affidavit in opposition to plaintiff's motion was made by William H. Groner, president of the defendant corporation. This affidavit reaverred the allegations of the defendant's original answer and affirmative defense. In addition Groner stated that at no time did plaintiff inform defendant of the length of the grace period after defendant had informed plaintiff that the defendant intended to take advantage of the grace period.
Subsequently, the plaintiff filed an answer to defendant's affirmative defenses and *213 counterclaim. The plaintiff admitted that it received a check in the amount of $4,575 on July 23, 1958, which plaintiff returned and refused to accept. This unsworn answer then denied the allegations of defendant's answer and affirmative defenses. The defendant then moved to strike the plaintiff's answer as being filed late and for judgment on the counterclaim. This motion was apparently disposed of by the final decree.
Thereafter the defendant filed an affidavit of Stanley Sirotin in opposition to plaintiff's motion for summary decree. Sirotin stated that he was no longer an agent of defendant; that he handled the transaction in issue; and then in the final portion of the affidavit stated:
"4. There is no question about the fact that Plaintiff acted as our attorney and misled me completely as to the number of days of the grace period of the mortgage under foreclosure. In my letter to the Plaintiff dated July 30th, a copy of which is annexed to Plaintiff's moving papers, there is every indication of my position that I was furnished with misleading information by the Plaintiff. At the time I wrote this letter I was trying to resolve this matter in an amicable way. Obviously I did not wish then to express myself fully, however, I state now that I was completely misled by Plaintiff and his partner as to the grace period in the mortgage and was given every reason to believe that it was thirty (30) days and not twenty (20) days. Plaintiff's letter to me indicating the default came, therefore, as a great surprise."
On the basis of the pleadings, affidavits and exhibits, the trial judge entered a summary final decree finding no genuine issues of material facts existed, a conclusion with which this court cannot agree.
It is a fundamental principle under Rule 1.36, Florida Rules of Civil Procedure, 30 F.S.A., that factual issues may not be tried or resolved in a summary judgment proceeding. Johnson v. Studstill, Fla. 1954, 71 So.2d 251. Such judgment should not be granted unless the facts are so clear that nothing remains to be decided but questions of law. Yost v. Miami Transit Co., Fla. 1953, 66 So.2d 214. The procedural requirements to be followed are clearly stated by the District Court of Appeal for the Third District Court of Appeal in Buck v. Hardy, Fla.App. 1958, 106 So.2d 428, as follows:
"The burden of showing the absence of any genuine issue as to all material facts, which under the substantive law would entitle the plaintiff to a judgment, is upon the defendant-movants. The Court in ruling on the motion is required to draw all reasonable inferences of fact from the proofs proffered in favor of the adversary and against the movant. Warring v. Winn-Dixie Stores, Inc., Fla.App. 1958, 105 So.2d 915; 6 Moore's Federal Practice (2nd Ed.), par. 56.15(3), p. 2123." (Emphasis added.)
We note from the affirmative defenses and the affidavits filed in support thereof that one of the defenses raised is that the defendant was misled by plaintiff as to the length of the grace period. A similar defense was raised by a mortgagor in the case of Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751, 756. In the Kreiss case a decree pro confesso had been entered because a corporate seal had been omitted from the answer of the mortgagor. The mortgagor moved to set aside the decree pro confesso and the lower court denied the motion. On appeal the Supreme Court held that the motion should have been granted provided the answer asserted a meritorious defense. More specifically the court stated:
"If there was nothing in this case to appeal to the conscience of a court of equity but the nonaction of complainant upon prior defaults in the payment *214 of taxes and interest installments, we would say without hesitation that the answer does not set up a meritorious defense; but when we find in addition to nonaction of the holder of the notes and mortgage towards accelerating the maturity of the obligation, that the proposed answer alleges that the value of the property because of the improvements is approximately twelve times the amount of the debt at the time of filing of bill of complaint, with the possibility that the improvements were being made, or that the work was being done, while the defendants were in default, and it is further alleged that the complainant stated that `it would be agreeable to carry said interest' on basis of defendants paying to him 8 per cent. on past-due interest, we cannot say that the defendants were not lulled into a feeling of security and led to believe that such payments would not be insisted upon without notice to them or by some outward act of the complainant manifesting his intention to declare the whole amount due unless interest and taxes were paid. In arriving at this conclusion we have not lost sight of the allegation of the answer that `the complainant finally advised these defendants he did not care to accept payment of said interest but that he intended to declare the entire amount due that was secured by the mortgage, and thereafter said complainant proceeded to file the bill in this cause and attempt to declare under the circumstances hereinbefore set forth, the money that will not be due for eighteen years, due and payable at this time.' The defendants having offered to pay `all interest due and all taxes,' the advice of the complainant that he did not care to accept the interest, and that he intended to declare the entire amount due, made it unnecessary for the defendants to move further in the matter of interest and taxes until they were given an opportunity to pay without having the principal sum accelerated.
"A court of equity is a forum for the administration of right and justice, and in view of the circumstances disclosed by the record in this case, we do not believe that it will be right or just to permit the complainant to accelerate the maturity of the notes given for the principal sum without giving the defendants an opportunity to pay the amounts which they were in duty bound to pay under the contract if no default had occurred."
In 59 C.J.S. Mortgages § 495(6)  Circumstances Preventing Acceleration, the following general principles appear:
"The right to accelerate the maturity of the entire debt secured by a mortgage or deed of trust may be prohibited or diminished by statute. Equitable principles have been invoked to relieve a mortgagor from acceleration of the maturity of the debt, and in determining whether to relieve against acceleration the court may consider the conduct of the parties, the amount paid in reduction of the debt, and the improvements made on the property by the mortgagor. Equity will relieve the mortgagor where the mortgagee has been guilty of unconscionable conduct, as where the default is caused or induced by the mortgagee's acts or declarations. Equity may also relieve against acceleration where default results from accident or mistake, or where strict enforcement of acceleration would impose an unconscionable hardship on the mortgagor and give the mortgagee an unconscionable advantage. The mortgagor has been relieved where the default was the result of a mistake of law made in good faith and the mortgagee was not injured, where the *215 amount of the default was small and the default occurred shortly before the enactment of legislation to relieve distressed mortgagors, where the mortgagor had made substantial payments in reduction of the debt secured and the default was slight and due to inadvertence, and in the case of a technical unintentional default. Relief has also been granted against acceleration where the mortgagor, after making every reasonable effort, has been unable to find the creditor, as where the mortgage has been assigned without his knowledge, although not in that case if the debtor made no tender to the mortgagee to whom he supposed interest was payable."
Upon reference to the principles of equitable defenses to mortgage foreclosures that have been applied by Florida Courts, a summary thereof appears in 22 Fla.Jur. Mortgages, section 214, as follows:
"A court of equity has the power of relieving a mortgagor from the effect of an operative acceleration clause in a mortgage where the default of the mortgagor is the result of some unconscionable or inequitable conduct of the mortgagee, or where no harm is done to the security by virtue of the default, and in view of the circumstances the court considers it to be unjust and inequitable to order foreclosure because of a merely unharmful breach of a condition of the mortgage. The court may also relieve a mortgagor from the effect of the acceleration clause where the default is caused by the confusion or mistake of the mortgagor acting in good faith, or where the mortgagor is technically in default because of unusual circumstances."
On the basis of the foregoing legal principles considered in light of the issues raised by the pleadings and affidavits, it is apparent that material issues were tendered which, if proved, could constitute equitable defenses to the acceleration action of the plaintiff. Without passing on the merits of the defenses raised, we are, however, compelled to reverse upon the sole basis that genuine issues of fact existed. The affidavits of William H. Groner and Stanley Sirotin dispute the contention of plaintiff that it was entitled to judgment as a matter of law. Intentional misrepresentation is alleged in defendant's pleadings and supported by affidavits. The plaintiff contends it paid the insurance, but in Groner's affidavit it is contended that defendant had paid the insurance premium. The affidavit of Sirotin also refutes plaintiff's contention that defendant, or its agent, knew the length of the grace period in the mortgage, thereby creating a disputed factual issue. The manner in which these opposing affidavits should have been interpreted is clearly enunciated in Humphrys v. Jarrell, Fla.App. 1958, 104 So.2d 404. Judge Kanner, speaking for this court, stated at page 410 of 104 So.2d:
"Beyond and above the principles and rules hereinbefore stated, generally the courts hold the moving party for summary judgment or decree to a strict standard and the papers supporting his position are closely scrutinized, while the papers opposing are leniently treated in determining whether the movant has satisfied the burden required of him. Moore's Federal Practice, 2nd ed., Vol. 6, p. 2336 and p. 2339. In determining the existence of a genuine issue of material fact, all inferences of fact from the proofs proffered at the hearing must be drawn by the trial court against the movant and in favor of the party opposing the motion. Moore's Federal Practice, 2nd ed., Vol. 6, p. 2125. Likewise, an appellate court should indulge all proper inferences in favor of the party against whom a summary judgment or decree has been requested. See Delany v. Breeding's Homestead Drug Co., Fla. 1957, 93 So.2d 116, and *216 Pritchard v. Peppercorn & Peppercorn, Inc., Fla. 1957, 96 So.2d 769."
This cause is reversed for further proceedings not inconsistent with or contrary to the views expressed herein.
SHANNON, J., and SMITH, CULVER, Associate Judge, concur.