144 So.2d 312 (1962)
David COOK, a Minor, by His Mother and Next Friend, Alean Cook, and Alean Cook, Individually, Appellants,
v.
Philip O. LICHTBLAU and Thomas E. Daly, Appellees.
No. 2993.
District Court of Appeal of Florida. Second District.
August 29, 1962.
Rehearing Denied September 26, 1962.
Rupert Jasen Smith, Fort Pierce, for appellants.
Henry Burnett; Fowler, White, Gillen, Humkey & Trenam, Miami, for appellees.
ALLEN, Acting Chief Judge.
Appellants, plaintiffs below, filed their amended complaint against appellees seeking damages for medical malpractice alleged to have resulted in certain injuries to the minor plaintiff. Said injuries were alleged to have arisen out of a surgical operation performed on the minor plaintiff by defendants doctors, an orthopedic surgeon and anesthesiologist, in defendant hospital. Before an answer was filed, the pretrial maneuvers culminated in a motion for summary judgment filed on behalf of defendant-doctors. Said doctors both practiced in West Palm Beach and the operation was performed in that city.
In opposition to the motion for summary judgment, plaintiffs filed the affidavit of one Jack Reiss, M.D., a physician practicing in Miami. Said affidavit reads:
"BEFORE ME, the undersigned authority, personally appeared JACK REISS, M.D., and after being duly cautioned and sworn, deposes and says:
"That he is a duly licensed and practicing physician in the City of Miami, Florida. That he has examined the hospital records respecting the admission *313 of David Cook in the St. Mary's Hospital from February 7, 1960 to February 12, 1960, and which were identified at the deposition of the hospital record custodian, Rosemary Dudash. That he has examined the depositions of Dr. Daly, the anesthetist, and Dr. Lichtblau, the surgeon, in this case. That the hospital records reflect that a condition of `acidosis' was present before the operation on the child on March (sic-February) 7, 1960 and that this condition continued for several days. That it is well known medically and to him that `acidosis' from any cause is a contraindication for giving anesthesia. That, in fact, some degree of `acidosis' accompanies most general anesthesia as there is a definite and pronounced reduction in serum and blood bicarbonate accompanying anesthesia, all of which tends to bring about hypoxia or anoxia which is a lessened degree of oxygen going to the brain and which in turn, if severe, can lead to brain damage. That it is further well known that oxygen lack due to asphyxia, from any cause, is accompanied by retention of CO[2] which further increases `acidosis.' That in view of the foregoing and in view of the fact as stated that anesthesia itself would tend to cause `acidosis' and resultant hypoxia, that it was not in accordance with the usual judgment, skill and care ordinarily required for the practice of medicine on the part of a surgeon and anesthetist to have given anesthesia to David Cook under these circumstances and without treatment of the pre-existing `acidosis,' i.e., was not what a reasonable and prudent physician would do and that this is negligence in any community in this country, including West Palm Beach. Further, that by administering anesthesia in this case to a child who was already in `acidosis' there resulted a decreased supply of oxygen to the brain and that this brought about a situation which affected the health of the child adversely.
"It should be further noted that there was apparently no attempt made prior to the operation or directly thereafter to combat this condition of `acidosis' by the giving of insulin or intravenous fluids, and also that there is no record of any blood pressure recordings; there was no treatment rendered for the resulting brain condition and apparently neurological examination and consultation was not rendered or sought. That the child was discharged from the hospital while it had a temperature of 100, was coughing and with large amounts of vomitus.
"That all of the foregoing in the last paragraph was not in accordance with the usual judgment, skill and care ordinarily required in the practice of medicine."
In granting defendants' motion the lower court determined:
"* * * it does not appear from the record that Jack Reiss, M.D., has ever practiced medicine in Palm Beach County and West Palm Beach in particular, and it does not appear that he is familiar with the customary medical practices and procedure of a reasonable and prudent physician in this community; further, the hospital record, upon which the Affiant relies, when read with the testimony of the treating physician, leaves no issue to be decided. The Court finds that there is no genuine issue as to any material fact, with reference to any of the defendants; * * *."
Whereupon, summary final judgment was entered in favor of defendants.
In effect, the lower court ruled that the testimony of a Miami doctor was incompetent on the issue of the ordinary care required of a physician practicing in West Palm Beach. Apparently the lower court excluded the affidavit of Dr. Reiss under the so-called locality rule.
The question to be determined herein is whether the lower court erred in refusing to *314 consider the affidavit of Dr. Reiss. Had said affidavit been considered, it is clear that an issue of material fact would have existed so as to preclude the entry of summary judgment.
We hold that the exclusion of said affidavit from its consideration was reversible error by the lower court.
The so-called locality rule in malpractice cases, which has been applied to confine expert medical testimony to that which can be given by doctors who practice in the same community as the defendant, was originally premised on the theory that only such local doctors were competent to testify as to acceptable medical practices existing in that community. Such may well have been true at a time when communications were rudimentary and differences existed between, for example, a rural and an urban area in both the average degree of skill possessed by and the facilities available to medical practitioners. To the extent that certain remote areas may still differ significantly in these respects from the more populated urban and suburban complexes, it can be true today. While recognizing that such geographical distinctions can still exist regarding standards of medical competence and procedure, our courts have indicated that the "locality" from which medical experts can be chosen to testify concerning the standards required of their professional brethren has been expanded from the same locality to the same or similar locality. In Couch v. Hutchison, Fla.App. 1961, 135 So.2d 18, at 21, this court, in an opinion by Judge White, stated:
"In those jurisdictions where the literal rule has been abandoned or modified it appears that the law still contemplates only that a physician shall exercise the skill and diligence of the average practitioner in the same or similar locality. * * *"
In Bourgeois v. Dade County, Fla. 1956, 99 So.2d 575, 72 A.L.R.2d 391, our Supreme Court, in an opinion written by Mr. Justice Thornal, said:
"Admittedly the science of medicine is not an exact science. Physicians are not to be held liable for honest errors of judgment. They are allowed a wide range in the exercise of their judgment and discretion. To hold one liable it must be shown that the course which he pursued was clearly against the course recognized as correct by his profession. On the other hand the attending physician must use the judgment and form the opinions of one possessed of knowledge and skill common to medical men practicing in the same or similar communities. Reagan, Doctor and Patient and the Law, Sec. 39, p. 227." (Emphasis supplied)
Appearing in the introduction of an annotation in 8 A.L.R.2d 772 at 773, is a fairly cogent explanation of what the phrase "same or similar" should be understood to mean in this context
"* * * Consequently, the earlier rule requiring the expert witness' familiarity with the practice and standard of care in the defendant's particular community has been relaxed by succeeding decisions so as to relate the inquiry to his knowledge of such practice and standard in the `same locality or vicinity,' `the same or similar, or like communities,' or in `similar localities in the same general neighborhood,' so that it may be broadly said that the controlling factor in determining the expert's competency to testify as to the degree of care against which the defendant's treatment is to be measured is, aside from his basic educational and professional training, his practical knowledge of what is usually and customarily done by other practitioners under circumstances similar to those which confronted the defendant charged with malpractice." (Emphasis supplied)
The Supreme Court of Florida, in an oft-cited dictum to the effect that the locality rule has lost its significance, stated in *315 Montgomery v. Stary, Fla. 1955, 84 So.2d 34, at 39:
"Appellants next urge that the trial court erred in overruling their objections to testimony by three physicians from Chicago and its environs as to the propriety and acceptability of the treatment administered to the infant in this case, in the absence of a showing that they had practiced in a community similar to Lake County, Florida. The rule contended for, as stated by counsel for appellant Montgomery, is that `no expert testimony is admissible to show a failure on the part of a physician to employ a proper or acceptable treatment unless the expert is first qualified regarding his knowledge of the practice and treatment usually employed by physicians in the particular locality involved, or at least some similar community.' Appellees point out that this rule was originally formulated when communications were slow or virtually non-existent, and that it has lost much of its significance today with the increasing number and excellence of medical schools, the free interchange of scientific information, and the consequent tendency to harmonize medical standards throughout the country. We believe appellees' arguments to be well taken, but we do not in any event consider the rule to necessitate a reversal under the facts of this case. Of all of the testimony of the three Chicago doctors, (two testified by deposition and one, Dr. Nicholas, in person) only that of Dr. Nicholas, on proximate cause, was needed to sustain the verdicts of the jury. Proximate cause does not change with the locality. The jury could have found, as a matter of their own common knowledge and experience, and independent of expert testimony as to acceptable medical practice, that the fingers and thumb of a premature infant were needlessly burned off, and that this could not be considered acceptable medical practice in any community. See Benson v. Dean, 232 N.Y. 52, 133 N.E. 125; Vergeldt v. Hartzell, 8 Cir., 1 F.2d 633; Wilson v. Martin Memorial Hospital, 232 N.C. 362, 61 S.E.2d 102; Richeson v. Roebber, 349 Mo. 132, 159 S.W.2d 658, 141 A.L.R. 1; Mehigan v. Sheehan, 94 N.H. 274, 51 A.2d 632; and Lanier v. Trammell, 207 Ark. 372, 180 S.W.2d 818."
Notwithstanding the obiter character of the first part of the foregoing quotation, Judge Choate, in his opinion in Kolesar v. United States, S.D.Fla. 1961, 198 F. Supp. 517, at 521, a malpractice case arising under the Federal Tort Claims Act, made the following observation:
"Although legalistically dicta the Supreme Court of Florida in Montgomery v. Stary, Fla. 1955, 84 So.2d 34, agreed with appellee's argument pointing out the locality rule of medical standards was originally formulated when communications were slow or virtually non-existent, and that it has lost much of its significance today with the increasing number and excellence of Medical Schools, the free interchange of scientific information, and the consequent tendency to harmonize medical standards throughout the country. While dicta in the case, it is an expression of the Supreme Court of this State and one which the court took pains to forcefully express. I find it to constitute a part of the law of Florida. * * *"
In their work on Professional Negligence, Professors Roady and Anderson of Vanderbilt University School of Law included an article by Allan H. McCoid, Professor of Law, University of Minnesota, entitled "The Care Required of Medical Practitioners." On page 33 it is stated:
"The second principal qualification of the general standard is in terms of the locality or community in which the defendant-doctor practices. This appeared in the American decisions of the nineteenth century and is repeated in *316 some recent decisions. The object of the qualification was to protect the country physician. In Small v. Howard [128 Mass. 131, 35 Am.Rep. 363 (1880)] the defendant was a general practitioner in a country town of 2,500 people. He undertook to care for a serious wound in the plaintiff's wrist, which required considerable skill in treatment, although there was an eminent surgeon living only four miles away and no emergency presented itself. The trial court charged that the defendant, having undertaken to practice in a town of comparatively small population, `was bound to possess that skill only which physicians and surgeons of ordinary ability and skill, practicing in similar localities, with opportunities for no larger experience, ordinarily possess; and he was not bound to possess that high degree of art and skill possessed by eminent surgeons practicing in larger cities, and making a specialty of the practice of surgery.' On appeal, the Supreme Judicial Court of Massachusetts stated that it was common knowledge that a doctor in a small community did not make a specialty of surgery and would seldom be called upon to perform difficult operations, and furthermore that he would have fewer opportunities to observe others in practice than would be available in larger cities and public hospitals. Other decisions also place emphasis upon the country doctor's lack of opportunity for wide experience and acquisition of knowledge."
On page 35 Professor McCoid stated:
"The lessening effect of locality as a qualification of the standard has become even more apparent within the past twenty years. In 1940, in Tvedt v. Haugen, [70 N.D. 338, 294 N.W. 183, 132 A.L.R. 379] * * * the court said:
"`The duty of a doctor to his patient is measured by conditions as they exist, and not by what they have been in the past or may be in the future. Today, with rapid methods of transportation and easy means of communication, the horizons have been widened, and the duty of a doctor is not fulfilled merely by utilizing the means at hand in the particular village where he is practicing. So far as medical treatment is concerned, the borders of the locality or community have, in effect, been extended so as to include those centers readily accessible where appropriate treatment may be had which the local physician, because of limited facilities or training, is unable to give.'"
Again, on page 36, Professor McCoid commented that the Iowa Supreme Court permitted testimony by doctors from Evanston, Illinois, in an action against doctors practicing in Davenport, Iowa, on the theory that the practice in and around Davenport was comparable to practice in and around metropolitan Chicago. He also commented that courts in Idaho, New Jersey, and Pennsylvania took the position that the standard of practice could no longer be narrowly restricted to the community in which the doctor operates nor even to communities of the same size, considering modern means of communication and transportation and the growing availability of clinical facilities in most parts of the country.
The circumstances attendant to the instant case did not justify restrictive imposition of the "locality rule." Moreover, any reasons in logic and law which compel retention of this rule, in whatever form, were not present in this case. The metropolitan nature of Florida's lower east coast, coupled with this court's awareness that up-to-date medical facilities and techniques are at the disposal of almost any modern city in this country, leads us to judicially notice that, insofar as the practice of medicine is concerned, Miami is at least a community similar to West Palm Beach. With the ever increasing growing together of urban and suburban communities, it is not unusual for a doctor *317 from one city to operate or attend patients in hospitals located in adjacent or nearby cities.
Having concluded that Dr. Reiss, though from Miami, was a competent medical expert on the ordinary care required of a doctor in West Palm Beach, we note that Dr. Reiss stated in his affidavit that the procedures followed by the defendants in this case were "negligence in any community in this country, including West Palm Beach." (Emphasis supplied.) Said affidavit clearly raises a material issue of fact which is not laid to rest by anything to the contrary appearing in the depositions of the defendants. It is elementary that a motion for summary judgment should not be granted in a cause when there are unresolved issues of material fact.
For these and the foregoing reasons the summary final judgment here appealed is reversed and remanded for further proceedings not inconsistent herewith.
Reversed.
WHITE, J., and STANLY, W.A., Associate Judge, concur.