171 So.2d 412 (1965)
Ellen Morgan HOLL, an incompetent, by and through her husband and guardian, William E. Holl, individually, and Central Bank & Trust Co., substituted guardian, Appellants,
v.
Leroy E. TALCOTT, Jr., Donald Andrus, George C. Austin and Victoria Hospital, Inc., Appellees.
No. 64-220.
District Court of Appeal of Florida. Third District.
February 2, 1965.
Rehearing Denied February 23, 1965.
Nichols, Gaither, Beckham, Colson & Spence and Alan R. Schwartz and Robert Orseck, Miami, for appellants.
Carey, Terry, Dwyer, Austin, Cole & Stephens, Miami, for Talcott and Andrus.
Blackwell, Walker & Gray and Sam Powers, Jr., Miami, for Austin.
Knight, Smith Underwood & Peters and Cecyl L. Pickle, Miami, for Victoria Hospital.
Before BARKDULL, C.J., and HORTON and HENDRY, JJ.
PER CURIAM.
In this appeal, we are considering the propriety of the trial judge's order *413 granting a summary judgment in defendants' favor, therefore, we must consider the facts in the light most favorable to the plaintiff.[1]
Accordingly, we reproduce, in full, the statement of the case as found in plaintiff-appellants' brief:[2]
"This is an appeal from a summary final judgment entered in favor of four defendants in a malpractice case. The case is a tragic one to say the least. On September 9, 1959, Ellen Morgan Holl, a 33-year old wife and mother of three minor children, was admitted to Victoria Hospital in Miami, Florida, for an ordinary hemorrhoidectomy and spot ligation of varicose veins on the left calf. The operation was performed early on the morning of September 10, 1959. On September 12, as she lay in her hospital bed, Mrs. Holl, the victim of a severe brain inflammation or encephalitis, went into a deep coma, from which she has not awakened to this day. From the morning of September 12, 1959, to the present Mrs. Holl has not spoken an intelligible word, nor left her bed, nor moved about under her own power. She has been reduced to the equivalent of a plant.
"This action was commenced by William E. Holl, as her guardian and husband. Named as defendants were Leroy E. Talcott, Jr. and Donald Andrus, the surgeons; George C. Austin, the anesthesiologist; and Victoria Hospital, Inc. After the institution of the action, extensive and detailed discovery proceedings were commenced. Indeed the record comprises over 1,500 pages and this is exclusive of a plethora of hospital records also before the court in the form of exhibits.
"Each of the defendants moved for summary judgment claiming that no departure from the standards of their profession were shown as a matter of law. In opposition to the motions for summary judgment, the plaintiffs interposed the affidavit of Dr. David J. Graubard, an eminently qualified New York physician, surgeon and expert. The defendants each then moved to strike the affidavit on the grounds of legal insufficiency. The motions to strike and motions for summary judgment simultaneously were granted, and summary final judgment was entered.
"Subsequently, the plaintiffs moved for a rehearing on the motions for summary judgment or in the alternative sought to reopen the case to submit a new affidavit designed to cure any technical defects, if any there were, in the original affidavit. After a hearing at which the new affidavit was proferred, the plaintiffs' motion was denied. This appeal from the final summary judgment followed."
It is readily apparent that the propriety of the trial court's granting of the motions for summary judgment must turn upon a determination of the legal sufficiency of the affidavit of Dr. David Graubard, we reproduce it in full:
"BEFORE ME, the undersigned authority, personally appeared DR. DAVID J. GRAUBARD, who first being duly sworn and cautioned, deposes and says:
"1. That he is a duly licensed and practicing physician in the City of New York, County of New York and State of New York. That he is a member of the following Medical Associations: New York County Medical Society; Medical Society of the State of New York; American Medical Society; Industrial Medical Association; Association of American Railway Surgeons; Rudolf Virchow *414 Medical Society; American Association for the Advancement of Science; New York Academy of Sciences; Member of the Health Royal Society of Great Britain; Certified Fellow of the International College of Surgeons; Diplomate of the International Board of Surgeons; Specialist credited by the State of New York in Workmen's Compensation cases in General and Traumatic Surgery, and received his formal education from the following educational institutions: University Bellevue Hospital and Medical College, New York City, 1932; Graduate in surgery  New York University Medical College, 1946.
"2. That he has examined the hospital records concerning the admission of ELLEN MORGAN HOLL to the Victoria Hospital from September 9, 1959, to October 1, 1959 and which were identified at the deposition of the hospital records custodian, Adele Alvarado.
"3. That he has examined the hospital records concerning the admission of ELLEN MORGAN HOLL in Jackson Memorial Hospital from October 1, 1959 to January 1, 1960 and which were identified at the deposition of the hospital records custodian, Vivian Perdomo.
"4. That he has reviewed and examined the depositions of Dr. George C. Austin, the anesthetist, and Dr. LeRoy E. Talcott, Jr., and Dr. Donald Andrus, the surgeons.
"5. That he has seen and examined ELLEN MORGAN HOLL this 10th day of May, 1963 at the Baptist Hospital, Miami, Florida.
"6. That based on his review of the aforesaid documentary evidence, he finds that Dr. LeRoy E. Talcott, Jr. and Dr. Donald Andrus:
"(a) Failed to notify and apprise ELLEN MORGAN HOLL of the risk incident to operative procedure contemplated by said surgeons;
"(b) Failed to obtain an adequate history from ELLEN MORGAN HOLL pre-operatively;
"(c) Failed to perform an adequate pre-operative examinations;
"(d) Failed to exercise reasonable care in following ELLEN MORGAN HOLL'S condition, signs and symptoms in the recovery room, and thereafter in her home;
"(e) Created a recto-vaginal fistula or failed to discover one if it did pre-exist either before or after the operation on September 10, 1959;
"(f) Failed to order and approve the special nurses engaged by the family of ELLEN MORGAN HOLL.
"(g) Failed to adequately, properly and sufficiently direct, instruct and supervise the activities of the special nurses caring for ELLEN MORGAN HOLL:
"(h) Failed to adequately investigate the history of ELLEN MORGAN HOLL set forth in the records in her prior hospital admissions and in the records of her prior treating doctors;
"(i) Ordered excessive drug dosages without proper testing of ELLEN MORGAN HOLL as to sensitivity to such excessive doses;
"(j) Failed in the post-operative care of ELLEN MORGAN HOLL to carefully heed the warnings and complaints of ELLEN MORGAN HOLL, along with her other signs and symptoms;
"(k) Failed to obtain and request adequate blood pressure readings;
"(1) Prescribed drug contra-indicated due to ELLEN MORGAN HOLL'S pre-operative history and post-operative complaints;

*415 "(m) Failed to institute care and treatment to ELLEN MORGAN HOLL upon the onset of her signs and symptoms.
"7. That the foregoing actions on the part of LeRoy E. Talcott, Jr., and Donald Andrus narrated in paragraph 6 were not in accordance with the usual judgment, skill and care ordinarily required for the practice of medicine on the part of a surgeon or surgeons, and was not what a reasonable and prudent surgeon or surgeons would do in that the aforesaid acts narrated in paragraph 6 constituted negligence in any community in this country including Miami, Florida, during the times that ELLEN MORGAN HOLL was in Victoria Hospital, Inc.
"8. That based on his review of the aforesaid documentary evidence, he finds that the anesthetist, George C. Austin:
"(a) Failed to obtain an adequate history from the patient, ELLEN MORGAN HOLL, whom he was to administer the anesthetic to and upon whom he did in fact administer a spinal anesthetic, and failed to adequately, properly and sufficiently elicit information as to contra-indications for the use of spinal anesthetics.
"(b) Failed to perform a thorough and complete pre-anesthetic physical examination.
"(c) Used the wrong concentration of ponticane when he administered the spinal anesthetic to ELLEN MORGAN HOLL.
"(d) Failed to write down and properly record the signs and symptoms of ELLEN MORGAN HOLL in the hospital records at Victoria Hospital and failed to properly and adequately inform her treating physicians of her signs and symptoms as observed by him pre-operatively during the operation and post-operatively in the recovery room.
"(e) Failed to set up adequate safeguards for the sterilization of the anesthetic pack and tray he used in the administration of the anesthetic upon ELLEN MORGAN HOLL.
"(f) Relied on the actions of the hospital personnel and drug manufacturers rather than taking his own person precautions to see that the equipment, drugs and medications he used were properly sterilized and of such quality as to be fit for use upon ELLEN MORGAN HOLL.
"(g) Failed to adequately, properly and sufficiently inform ELLEN MORGAN HOLL as to the risks incident to the use of a spinal anesthetic.
"(h) Failed to heed warnings of contra-indications for the use of a spinal anesthetic in the case of ELLEN MORGAN HOLL which included a urinary frequency due to? and an ovarian tumor.
"(i) Failed to require a specific gravity in regard to the urine analysis.
"(j) Relied on statements made by ELLEN MORGAN HOLL who was under sedation and legally incompetent at the time of giving such statements.
"(k) Failed to test for allergies or drug reactions.
"(l) Violated the instructions and recommendations of those he acknowledges as authorities in the field of anesthesiology.
"(m) Failed to render proper rescue techniques and abide by proper rescue procedures after having undertaken to come to the aid of ELLEN MORGAN HOLL after the onset of her coma.

*416 "9. That the foregoing actions on the part of George C. Austin, the anesthetist, narrated in paragraph 8 were not in accordance with the usual judgment, skill and care ordinarily required for the practice of medicine on the part of an anesthetist and were not what a reasonable and prudent anesthetist would do in that the aforesaid actions constituted negligence in any community in this country, including Miami, Florida, at all times ELLEN MORGAN HOLL was in Victoria Hospital.
"10. That based on his review of the aforementioned documentary evidence, he finds that the Victoria Hospital Inc., its agents, servants and/or employees:
"(a) Failed to perform sufficient and adequate laboratory work of ELLEN MORGAN HOLL.
"(b) Failed to adequately and properly supervise and direct special nurses engaged for ELLEN MORGAN HOLL'S care.
"(c) Failed to maintain adequate, proper and sufficient standards of sterilization for the drugs, medications and equipment used on ELLEN MORGAN HOLL.
"(d) Failed to perform a proper, adequate and sufficient physical examination upon ELLEN MORGAN HOLL prior to her operation;
"(e) Failed to take a proper, adequate and sufficient history from ELLEN MORGAN HOLL.
"(f) Failed to provide Dr. George C. Austin the anesthetist, with proper, adequate and sufficient resuscitation equipment after calling him in to render rescue services upon ELLEN MORGAN HOLL on or about September 12, 1959.
"11. That the foregoing actions on the part of Victoria Hospital, Inc., its agents, servants and/or employees, narrated in paragraph 10 were not in accordance with the usual judgment, skill and care ordinarily required of a hospital and its personnel, and were not what a reasonable and prudent hospital, acting through its agents, servants and/or employees, would do under the same circumstances and were contrary to ordinary standards of care generally found in any community in the country including Miami, Florida, and that this was negligence in any community in this country, including Miami, Florida, at the time ELLEN MORGAN HOLL was in Victoria Hospital, Inc.
"12. Based on a reasonable degree of medical certainty the foregoing acts of LeRoy E. Talcott, Jr., Donald Andrus, George C. Austin and Victoria Hospital, Inc., its agents, servants and/or its employees, narrated in paragraphs 6, 8 and 10 acting together proximately precipitated, caused, activated, aggravated and/or accelerated the injuries to the person of ELLEN MORGAN HOLL for which she claims damages herein.
 (s) David J. Graubard
 DR. DAVID J. GRAUBARD"
We must now test the sufficiency of this affidavit by the standard laid down in prior cases. In Hardcastle v. Mobley, Fla.App. 1962, 143 So.2d 715, 717, this court set out the plaintiff's obligation when defending against the defendant's motion for summary judgment:
"It is not sufficient in defense of a motion for summary judgment to rely on the paper issues created by the pleadings, but it is incumbent upon the party moved against to submit evidence to rebut the motion for summary judgment and affidavits in support thereof or the court will presume that he had gone as far as he could and a *417 summary judgment could be properly entered."
And further, the first district in Crovella v. Cochrane, Fla.App. 1958, 102 So.2d 307, 309, ruled:
"It is the duty of counsel to make timely presentation of all evidence of his client on the issues raised by a motion for summary judgment if he is to avoid the consequences of a proper disposition of the motion on the evidence before the court."
Although the affidavit of the plaintiff's medical expert is lengthy, viewed in the light of the above cited authority, it is lacking in legal sufficiency. The affidavit alleges many individual acts of malpractice on the part of the appellees, but nowhere in the entire affidavit did Dr. Graubard state with medical certainty or probability just what was wrong with appellant, nor did he specify any act or omission of the appellees. Neither did he give the reason for his opinion, i.e., a medical explanation of its basis, that appellees had departed from the requisite standard of care, and that this departure had proximately caused the appellant's condition.[3] The affidavit made allegations of negligence, but failed to point out specifically, or connect the acts of negligence with the resulting injury. In this regard, the affidavit was fatally defective, and the trial judge properly granted defendant's motion to strike it. It was therefore proper for him to grant the defendants' motion for summary judgment.
The order granting the defendants' motion for summary judgment was entered on December 19, 1963. On December 27, 1963 appellants moved pursuant to Rule 2.8 F.R.C.P., 31 F.S.A., for a rehearing, and to open the judgment for the submission of additional affidavits. Counsel for appellants in their petition in support of this motion, stated in pertinent part:
"Right and justice require that the plaintiff be given an opportunity to correct the defects, if any, in the affidavit of Dr. David J. Graubard, submitted in opposition to the motion for summary judgment, since such defects may be corrected and the plaintiffs could not have been aware of the necessity, if any, for additional affidavits or further showing in opposition to the motions until the affidavit of Dr. David J. Graubard was stricken by the court in the same order and ruling in which the summary judgment was entered for each of the defendants."
The above is the entirety of the support which appellants submitted with their motion for rehearing. The petition requests permission to correct any "defects" in the affidavit in opposition to the motion for summary judgment, but it does not point out in what manner those defects will be corrected. In effect, appellant was asking the court to buy a pig in a poke. They requested the court to exercise its discretion and grant a rehearing without in any way indicating why and on what basis the court should so act.
The appellants tendered a second affidavit of Dr. Graubard on the date of the hearing on the motion. This affidavit was the one they proposed to submit in opposition to the motion for summary judgment in the event that a new hearing was granted. This tender, therefore, turned the appellant's motion for rehearing into a motion for rehearing based upon affidavits pursuant to Rule 2.8(c). Inasmuch as, this rule requires that the affidavit be served with the motion this affidavit was untimely filed, and the trial judge correctly declined to permit its filing.
A motion for rehearing pursuant to Rule 2.8 is directed to the sound judicial discretion of the trial court. The record fails to show that the trial judge abused that discretion.
*418 We are not unmindful of the tragic results which this woman has suffered and we express great sympathy for her, but we can not permit this feeling of sympathy on our part to interfere with or be a substitute for the required application of sound and just principles of law.
The judgment appealed is affirmed.
Affirmed.
NOTES
[1] Michaels v. Spiers, Fla.App. 1962, 144 So.2d 835.
[2] We omit appellants' references to the record.
[3] Compare, Cook v. Lichtblau, Fla.App. 1962, 144 So.2d 312.