178 So.2d 135 (1965)
Joseph VISINGARDI, Appellant,
v.
Antonio TIRONE, Shelby Bogess, and St. Francis Hospital, Inc., a Florida nonprofit corporation, Appellees.
Nos. 64-595, 64-596.
District Court of Appeal of Florida. Third District.
August 3, 1965.
Rehearing Denied September 10, 1965.
*136 Nichols, Gaither, Beckham, Colson & Spence and Robert Orseck, Miami, for appellant.
Carey, Terry, Dwyer, Austin, Cole & Stephens and Edward A. Perse, Miami, for Tirone.
Taylor, Brion, Buker, Hames & Greene and Hoffman, Kemper & Johnson, Miami, for St. Francis Hospital.
Dean & Adams, Miami, for Bogess.
Before HENDRY, C.J., and CARROLL and BARKDULL, JJ.
BARKDULL, Judge.
By this consolidated appeal, the appellant [plaintiff in the trial court] seeks review of two summary final judgments in favor of the appellee, Antonio Tirone, a medical doctor, and the appellee, St. Francis Hospital, Inc. His complaint sounded in tort, alleging malpractice in the treatment of his late wife which resulted in her death.
The principal affidavit relied on by the plaintiff, in opposition to the motion for summary judgment, was one executed by Dr. Graubard, a New York physician. The appellant urges that the trial court committed error in that (a) the affidavit of Dr. Graubard affirmatively demonstrated negligence on the part of the doctor and the hospital; (b) there was a material issue as to informed consent; and (c) it failed to apply the doctrine of res ipsa loquitur.
The affidavit of Dr. Graubard was stricken from the file upon a motion alleging that it was insufficient by failing to contain statements which would be admissible at the time of the trial, and by failing to disclose that the doctor was familiar with the local standard in the community. We approve the striking of the affidavit upon the principle that it failed to contain sufficient allegations that would have been entitled to be admitted into evidence at the time of trial. See: Evans v. Borkowski, Fla.App. 1962, 139 So.2d 472; Harrison v. Consumers Mortgage Company, Fla.App. 1963, 154 So.2d 194; Rule 1.36(e), Florida Rules of Civil Procedure 30 F.S.A. It appears that the affidavit of this doctor amounts to no more than a conclusion or speculation similar to the one discussed in the recent case of Holl v. Talcott, Fla.App. 1965, 171 So.2d 412, involving the same doctor. The affidavit did not connect the cause of death to any specific negligence charged to the doctor. It is understandable why the doctrine of res ipsa loquitur was relied upon heavily by the appellant, because under this principle it would not be necessary to show the causal connection necessary to hold the doctor liable. Undoubtedly, malpractice actions are difficult to prove but, under the law, doctors are not ensurers of the success of their work. It appears that the trial judge would have been in error in striking the affidavit solely upon the ground of the failure of the doctor to state familiarity with local community standards. See: Montgomery v. Stary, Fla. 1955, 84 So.2d 34; Cook v. Lichtblau, Fla.App. 1962, 144 So.2d 312; Kolesar v. United States, S.D.Fla. 1961, 198 F. Supp. 517. However, if the action of the trial judge can be sustained upon any theory, it should not be interfered with. See: Berkman v. Miami National Bank, Fla.App. 1962, 143 So.2d 535; Crudele v. Cook, Fla.App. 1963, 165 So.2d 424; In re Estate of Schor, Fla.App. 1965, 172 So.2d 888 (opinion filed March 9, 1965).
In support of his argument that there was a conflict as to informed consent, the appellant cites Bowers v. Talmage, Fla.App. 1963, 159 So.2d 888; Russell v. *137 Harwick, Fla.App. 1964, 166 So.2d 904. The appellee doctor responds that these cases involve the failure of consent in its entirety. It is admitted, in the instant cause, that the consent for the operative procedures was, in fact, given. Without evidence as to the standard prevailing in the community, there was nothing before the trial judge to demonstrate an issue as to the breach of the duty in the community as to the matter of "informed" consent.
We specifically reject the contention that the doctrine of res ipsa loquitur is applicable in malpractice cases, in accordance with the following authorities: Foster v. Thornton, 125 Fla. 699, 170 So. 459; Grubbs v. McShane, 144 Fla. 585, 198 So. 208; Hine v. Fox, Fla. 1956, 89 So.2d 13; Crovella v. Cochrane, Fla.App. 1958, 102 So.2d 307. Finding the error urged by the appellant to be not well taken as to the appellee doctor, the summary final judgment in his favor will not be disturbed.
No error has been made to appear in the summary final judgment for the hospital. The record was devoid of any evidence to indicate any failure on the appellee hospital to measure up to the community standard.
In his reply brief, the appellant relies heavily upon a recent case of the Second District Court of Appeal of Florida [Matarese v. Leesburg Elks Club, Fla.App. 1965, 171 So.2d 606] and quotes as follows:
"A moving party, to be entitled to a summary judgment, has the burden of showing that the facts which would warrant judgment in his favor under applicable substantive law are indisputable. 6 Moore's Federal Practice, § 56.13 P. 2093 (2d ed. 1953). Whoever has the burden of proof will lose if he fails to sustain it. Steinberg v. Adams, D.C.S.D. New York, 1950, 90 F. Supp. 604, 608."
It is the position of counsel for the appellant that this statement requires the moving party to sustain the burden of proof to prevail on a summary judgment hearing. We do not so read the opinion. The first sentence quoted above relates to the burden to show absence of triable issues, citing 6 Moore's Federal Practice § 56.13 (2d ed. 1953). The second sentence of the quotation states that the one who has the "burden of proof" (on summary judgment) will lose if he fails to sustain it. With due deference to the court in the second district which decided the Matarese case, it would appear that the court there inadvertently substituted the phrase "burden of proof" for "burden on the motion." We feel that this is so because the burden assumed by a party who moves for summary judgment is not a burden of proof such as is shouldered by a plaintiff in the trial of a case, but is a burden to establish absence of genuine triable issues and that movant is entitled to judgment as a matter of law.
In the recent case of Harvey Building, Inc. v. Haley, Fla. 1965, 175 So.2d 780, the Supreme Court of Florida, speaking through Chief Justice Thornal, clearly outlined the burden assumed by or imposed upon the moving party on a motion for summary judgment, and stated the extent and limits of the showing required of the movant and that required of the opposing party in response thereto. We deem this recent pronouncement of the Supreme Court to be sufficiently helpful in this connection to justify its repetition here. It was as follows (175 So.2d at 782-783):
"A movant for a summary judgment has the burden of demonstrating that there is no genuine issue on any material fact. Rule 1.36(c) F.R.C.P., 30 F.S.A. All doubts regarding the existence of an issue are resolved against the movant, and the evidence presented at the hearing plus favorable inferences reasonably justified thereby are liberally construed in favor of the opponent. A summary judgment motion will be defeated if the evidence by affidavit or otherwise demonstrates the existence of a material factual issue. To defeat a motion which is supported by evidence which reveals no genuine *138 issue, it is not sufficient for the opposing party merely to assert that an issue does exist. If the moving party presents evidence to support the claimed non-existence of a material issue, he will be entitled to a summary judgment unless the opposing party comes forward with some evidence which will change the result  that is, evidence sufficient to generate an issue on a material fact. Connolly v. Sebeco, Inc., Fla., 89 So.2d 482; Barron and Holtzoff, Federal Practice and Procedure (Wright Edition), Vol. 3, Section 1235. When analyzed in this fashion the summary judgment motion may be categorized as a `pre-trial motion for a directed verdict.' At least it has most of the attributes of a directed verdict motion. Locke v. Stuart, Fla. App., 113 So.2d 402.
"The initial burden, therefore, is upon the movant. When he tenders evidence sufficient to support his motion, then the opposing party must come forward with counter-evidence sufficient to reveal a genuine issue. The movant, however, does not initially carry the burden of exhausting the evidence pro and con, or even examining all of his opponent's witnesses. To fulfill his burden he must offer sufficient admissible evidence to support his claim of the non-existence of a genuine issue. If he fails to do this his motion is lost. If he succeeds, then the opposing party must demonstrate the existence of such an issue either by countervailing facts or justifiable inferences from the facts presented. If he fails in this, he must suffer a summary judgment against him."
Moore's Federal Practice likens a motion for summary judgment prior to trial to a motion for directed verdict at time of trial, although indicating a stronger burden on a defendant when moving for a summary judgment than when moving for a directed verdict.[1] To the same effect is the recent opinion of Harvey Building, Inc. v. Haley, supra.
Therefore, for the reasons stated above, the summary final judgments here under review are hereby affirmed.
Affirmed.
*139 CARROLL, Judge (concurring in part and dissenting in part).
I concur in the affirmance of the summary judgment entered for the defendant hospital, St. Francis Hospital, Inc., in appeal No. 64-595.
I dissent from the majority judgment in appeal No. 64-596, which affirms the summary judgment in favor of the defendant Dr. Antonio Tirone. I agree with the majority holding that res ipsa loquitur was inapplicable. My dissent is because in my opinion it was reversible error for the trial court to strike, and not consider on summary judgment, the affidavit of Dr. Graubard which was relied on by plaintiff to show existence of a triable issue as to the alleged negligence of Dr. Tirone.
Upon a trial of this malpractice action, the plaintiff would be required to produce medical expert opinion testimony of negligence of the defendant doctor.[1] Therefore, when the defendant doctor moved for summary judgment, supported by discovery evidence submitted to show non-negligence, or the absence of triable issues, then in order to show a triable issue of negligence it was necessary for plaintiff to produce a deposition or affidavit of a medical expert containing opinion evidence of the negligence of the defendant doctor.[2]
This discovery affidavit in question, made by a nonresident doctor, which was in the file for use in opposition to a motion of defendants for summary judgment, was to be tested under subparagraph "e" of rule 1.36, Fla.R.C.P., relating to summary judgment. Subparagraph "e" which deals with the form of affidavits, states three requirements: (1) that they be made on personal knowledge; (2) set forth such facts as would be admissible in evidence at trial, and (3) that the affiant be competent to testify as to the matter stated. The majority here approved the striking of the affidavit for noncompliance with the second of those requirements. The affiant was not held to be incompetent to testify, nor was it held that the affidavit was not made on personal knowledge, although those contentions were made by counsel in argument. Little comment need be devoted to those factors. A medical doctor is competent to give expert testimony in regard to medical matters, and a nonresident doctor may give expert testimony in a Florida malpractice case.[3] The personal knowledge required of an expert witness is to have knowledge of the facts or premise upon which he bases his opinion.
The real matter of concern here was whether opinion evidence of Dr. Graubard, of the kind stated in his affidavit, if offered at a trial of the cause, would be inadmissible. In the affidavit Dr. Graubard listed a number of acts or omissions of the defendant doctor,[4] and stated that in his opinion *140 they were negligence,[5] and were the proximate cause of death of the patient.[6]
On what ground would a trial court exclude, as inadmissible in a malpractice case, the proffered testimony of a competent and qualified medical expert expressing his opinion that certain stated acts or omissions of the defendant doctor in treating the patient (based on his examination of discovery depositions on file, and of the hospital records which recorded pre-operative and operative procedures and post-operative complications and procedures), were negligent and were the proximate cause of the resultant injury or death?
The reasons given in the majority opinion why such evidence by a medical expert would be inadmissible at trial, and therefore his affidavit should be stricken and disregarded on summary judgment, were that it was only a conclusion and speculation, and "did not connect the cause of death to any specific negligence charged to the doctor." With due deference to my colleagues, I can not agree that the affidavit was thus deficient.
Expert witnesses are entitled to express conclusions. They are called for the express purpose of stating their conclusions in the form of opinion evidence. They give an opinion or "conclusion" on a subject, *141 based on facts with which they have acquainted themselves or otherwise become informed. The conclusion they express is an educated guess, upon applying their specialized knowledge and experience to the facts and circumstances at hand.
Nor was the affidavit to be rejected because it represented speculation on the part of the medical witness. The occasions are rare when the opinion testimony of a medical expert amounts to a positive answer to the question to which it relates. Therefore, opinion evidence given by medical experts necessarily involves speculation. The degree of speculation depends on the circumstances of the case, and the complication and difficulty of the factual questions involved upon which the issue of negligence turns. Thus in Atkins v. Humes, Fla. 1959, 110 So.2d 663, 669, 81 A.L.R.2d 590, while not using the word speculation, the court took note of the fact that such medical testimony necessarily is inconclusive and given to uncertainties but nevertheless is requisite and admissible. There the Supreme Court said:
"Since medicine is not an exact science, it is difficult, if not impossible, in malpractice cases to arrive at a conviction to moral certainty as to the cause of a pathological condition of a person. See Foster v. Thornton, supra [119 Fla. 49], 160 So. [490] at page 497. As stated in Dimock v. Miller, 202 Cal. 668, 262 P. 311, 312:
"`If * * * it is necessary to demonstrate conclusively and beyond the possibility of a doubt that the negligence resulted in the injury, it would never be possible to recover in a case of negligence in the practice of a profession which is not an exact science.'"
The other ground recited in the opinion, that the affidavit did not connect the cause of death to any specific negligence charged to the doctor, relates to the portion of the affidavit in which the doctor stated that the listed acts and omissions of the defendant doctor which he had characterized as negligence (combined with negligence of others), proximately caused the death. As affidavit evidence in opposition to a motion for summary judgment it was an adequate statement of proximate cause. See footnote No. 6. On summary judgment facts and inferences reasonably to be drawn therefrom are to be viewed in a light favorable to the party moved against. Discovery papers of the movant are carefully scrutinized, while those of the party moved against are treated gently.[7] Under those rules, would it not be more reasonable to infer the affiant relied on all of the acts or omissions he had stated, when he said they were the proximate cause of the death, rather than to assume or infer that he relied only on one or some of the listed items and not on the others?
The Graubard affidavit was not required to establish that the acts he viewed as negligence of the defendant doctor were the cause of death to the exclusion of any other reasonable hypothesis. His stated opinion that they were the proximate cause of the death would have been receivable in evidence even though it were shown that death could have been occasioned by one or more other causes. See Atkins v. Humes, supra, 110 So.2d 663 at 668, citing and quoting from DeGroot v. Winter, 261 Mich. 660, 247 N.W. 69.
Moreover, the majority decision would appear to be contrary to the ruling by the first district court of appeal in Corvella v. Cochrane, Fla.App. 1958, 102 So.2d 307. That was a malpractice case in which damages were sought from a treating doctor for personal injuries alleged to have resulted from his negligence in failing to correctly diagnose and treat the plaintiff for an alleged pregnancy. The defendant doctor moved for and was granted a summary *142 judgment. One point raised on appeal and discussed by the appellate court was a contention that the trial court erred in denying plaintiff's motion to strike an affidavit of a medical expert filed by defendant in support of his motion for summary judgment and intended as a refutation of the allegation of negligence.
In the Corvella case the appellant leveled some of the same charges at the affidavit which are made here. That court rejected them. There, as in this case, it was contended the affidavit failed to meet the requirements as to the form of such affidavits prescribed by rule 1.36(e) Fla.R.C.P. In rejecting the contention that the affidavit should have been stricken because it "only reflects the opinion of the affiant," and was not based on matters "within his personal knowledge," the first district court of appeal held that since on a trial of that type case "[j]urors and courts do not know and are not permitted arbitrarily to say what are the proper methods of diagnosing and treating human ailments," testimony of qualified medical experts "must be adduced to inform the jurors of the proper procedures for diagnosing and treating the particular case," and therefore the opinion testimony of medical expert witnesses submitted by affidavit was "competent to be received" on summary judgment. The affidavit in Corvella was further challenged on the ground that its force and effect depended on the authenticity of papers not attached thereto (as the rule specified). The court rejected that argument upon pointing out that the papers relied on by the medical expert were matters of record, consisting of "depositions and affidavits that were germane to the hearing on the motion for summary judgment." The same is true of the instant case, where the questioned affidavit shows it was predicated on the hospital records and on discovery depositions of the defendant doctors and others. Parenthetically, the court held in the Corvella case, as had been held earlier in the cases which it cited, that when evidence submitted on a motion for summary judgment creates doubt on a material issue of fact or is conflicting or such as to permit different reasonable inferences it "should be submitted to the jury as a question of fact to be determined by it." This serves to emphasize that on a hearing on motion for summary judgment the admissibility or inadmissibility of evidence offered by affidavit in support or in opposition to the motion should not be determined by the trial court by judging it as to weight and credibility.
In view of the importance of the issue of negligence to which the affidavit related, and the materiality to that issue of the matter contained in the affidavit, the fact that such medical opinion evidence is not only admissible on a trial but is a legal prerequisite to prosecution of the cause of action, the rejection of such evidence in affidavit form, on the motion for summary judgment, is difficult to explain other than by concluding the trial court tested it for weight and credibility and thought it lacking in those qualities. But, as stated above, since it possessed some evidentiary value on the negligence issue, it should have been accepted on the motion for summary judgment, and the motion to strike it should have been denied.
NOTES
[1] 6 Moore's Federal Practice, § 56.15(3), p. 2128.

* * *
"In determining whether the moving party has satisfied his burden it is helpful to refer to the theory underlying a motion for a directed verdict, for functionally the motion for summary judgment and the motion for a directed verdict are closely akin to each other. While the first is necessarily made on evidentiary materials largely derived from the moving and opposing papers and the second is based largely on live evidence proffered at trial, the moving party in making both motions takes the position that he is entitled to judgment as a matter of law on a set of facts that are not genuinely in dispute. In other words, if a verdict would be directed for the movant on the evidence presented at the hearing on the motion for summary judgment, the motion for summary judgment may properly be granted. The operation of the motions is, then, essentially the same in reference to those issues upon which the movant for summary judgment would have, at trial, the burden of proof. The operation is, however, somewhat different where the motions are made by the opponent of the party with the trial burden. Assume, for example, that the movant is the defendant who is attacking the merits of plaintiff's claim. On motion for directed verdict the party resisting the motion, i.e., the plaintiff, has had to and has presented his evidence, which is then scrutinized by the motion. On motion for summary judgment by a defendant on the ground that plaintiff has no valid claim, the defendant, as the moving party, has the burden of producing evidence, of the necessary certitude, which negatives the opposing party's (plaintiff's) claim. This is true because the burden to show that there is no genuine issue of material facts rests on the party moving for summary judgment, whether he or his opponent would at trial have the burden of proof on the issue concerned; and rests on him whether he is by it required to show the existence or non-existence of facts."
* * *
[1] In malpractice cases, except where acts or omissions of the doctor relied on as negligence are such that laymen could so recognize them without the need for assistance of medical expert opinion evidence, the latter is required. Atkins v. Humes, Fla. 1959, 110 So.2d 663, 666, 81 A.L.R.2d 590; Crovella v. Cochrane, Fla. App. 1958, 102 So.2d 307, 310; Brown v. Swindal, Fla.App. 1960, 121 So.2d 38.
[2] Harvey Building, Inc. v. Haley, Fla. 1965, 175 So.2d 780, 782-783.
[3] Couch v. Hutchison, Fla.App. 1961, 135 So.2d 18. See Montgomery v. Stary, Fla. 1954, 84 So.2d 34, 39-40.
[4] "Failed to obtain a complete and adequately sufficient pre-operative history from the decedent patient Dorothy Visingardi.

"Failed to heed the pre-operative condition of Dorothy Visingardi in that she had an abnormal blood pressure of 100/60 and rales in the lungs, which findings would contraindicate subjecting this patient to a surgical procedure such as was performed on her on August 16, 1961.
"Failed to exercise reasonable care in observing the signs and symptoms of Dorothy Visingardi in the recovery room and thereafter in her room.
"Failed to order adequate post-operative nursing supervision of Dorothy Visingardi when she was returned to her room from the recovery room.
"Failed to direct, supervise and order the checking of the vital signs of temperature, pulse, respiration and blood pressure of Dorothy Visingardi on a systematic basis after the patient was released from the recovery room.
"Failed to adequately investigate the history of Dorothy Visingardi as concerns her pre-operative history of continued headaches and being a blue baby.
"Failed to check and supervise the ordering, and administration of drugs employed on Dorothy Visingardi by the anesthesist.
"Failed to heed the warning signs and symptoms of Dorothy Visingardi postoperatively and to take adequate and proper steps to reverse the complications which ensued in the case of Dorothy Visingardi on August 16, 1961 after the patient was returned to her room from the recovery room.
"Failed to perform a lumbar puncture upon Dorothy Visingardi to ascertain if she had a cerebral hemmorage and proceeding blindly upon this erroneous assumption in rendering care and treatment to Dorothy Visingardi.
"Failed to perform a lumbar puncture to relieve the cerebral spinal fluid pressure and to check said pressure which would have shown the presence of cerebral edema.
"Failed to diagnose and treat Dorothy Visingardi for cerebral edema, such treatment necessitating the use of urea agents, steroids or concentrated albumin.
"Failed to provide the hospital with a manner and means to locate Dr. Tirone promptly in the event of an emergency and failed to promptly respond to the patient's aid and assistance upon receiving notification of her emergency state.
"Failed to provide for competent medical evaluation and care in the absence of Dr. Tirone after Dr. Tirone received telephone notification of the emergency state of Dorothy Visingardi on the evening of August 16, 1961.
"Failed to summon in specialists to evaluate examine and treat Dorothy Visingardi promptly and expeditiously on the evening of August 16, 1961."
[5] This statement in the affidavit was as follows:

"That the foregoing actions on the part of Dr. Antonio Tirone narrated in paragraph 4 above were not in accordance with the usual judgment, skill and care ordinarily required for the practice of medicine on the part of a surgeon or surgeons, and was not what a reasonable and prudent surgeon, or surgeons, would do in that the aforesaid acts narrated in paragraph 4 constituted negligence in any community in this country including Miami, Florida, during the times that Dorothy Visingardi was in St. Francis Hospital."
[6] "Based on a reasonable degree of medical certainty the foregoing acts of George Small, Antonio Tirone and St. Francis Hospital, its agents, servants and/or its employees, narrated in paragraphs 4, 5, 6 acting together proximately precipitated, caused, activiated, aggravated and/or accelerated the injuries to the person of Dorothy Visingardi for which she claims damages herein."
[7] Groner-Youngerman, Inc. v. Denison, Fla. App. 1959, 117 So.2d 210, 215; Humphrys v. Jarrell, Fla.App. 1958, 104 So.2d 404, 410; 6 Moore's Federal Practice ¶ 56.22, at 2336-37 (2d ed. 1953).